(Decided 18th February, 1881.)

Appeal of ELMER HEWITT, JR., in the Matter of the Estate of ELMER HEWITT, SR.

*Construction of a Deed made by a Man to a Woman by whom he had had children, whom he afterwards married—Inebriety, Fraud, Misrepresentation and Undue Influence—Instructions to Conveyancer—Mistake—Laches—Practice in Equity—Proceeding to have a Trustee appointed, under Art. 16, sec. 66, of the Code.*

By deed of the 15th of May, 1869, E. H., Jr., in consideration of the sum of five dollars " doth grant and assign unto A. during her natural life " certain leasehold and other property, and " also all his interest in the estate of Mrs. G. H. who holds during her life, and after her death it becomes the absolute estate of the heirs-at-law, the said E. H. Jr. will be entitled to one-third interest in said estate;" *habendum*, " unto the said A. during her natural life, and from and immediately after her death to have and to hold all of said property and estate before mentioned, unto the

children begotten of the bodies of said E. H., Jr. and A., their heirs, personal representatives and assigns absolutely, share and share alike, as tenants in common, subject, nevertheless, to the life estate of the said E. H. Jr., in all of said property." Then followed covenants against incumbrances, and for further assurance. At the time of the execution of this deed, E. H. Jr., and A. were living together as man and wife and had three children, and subsequenty married. E. H. Jr., had purchased from two of the seven devisees under the will of E. H. Sr., their father, their interest in property held by Mrs. G. H., their mother, for life under the will, which, upon her death, the will directed should be sold, and the proceeds divided among the seven children. In a proceeding by parties in interest by petition under Art. 16, sec. 66 of the Code, praying for the appointment of a trustee to sell the property of E. H. Sr., as directed by his will, and for the distribution of the proceeds among the parties entitled, it was HELD:

1st. That the deed embraced E. H., Jr's interest in the property in which his mother Mrs. G. H. had a life estate; and that the deed gave a life estate to A. in the property granted and assigned, and after her death an absolute estate in remainder to the children, subject to the life estate of their father, in case he should survive their mother, and that two-sevenths of the proceeds from the sale should be so applied.

2nd. That the deed was valid, there being no proof that E. H., Jr., was at the time of its execution in such a state of drunkenness, as alleged by him, as not to know what he was doing, or the conse-quences of his own acts; and that there was no proof that it was procured by fraud, misrepresentation and undue influence; and that the fact that he was living with A., as his wife, at the time of its · execution, did not raise the presumption of fraud and undue influence on the part of A.

3rd. That, though the deed was not in precise conformity with what it appeared, E. H., Jr's instructions were, yet no such mistake was made out by proof, as would enable a Court of equity to grant relief to E. H., Jr., on that ground; and that even were he entitled to relief, he had lost the right to it by *laches*, ten years having elapsed after the execution and recording of the deed, before E. H. Jr., took steps in the matter.

4th. That the deed being filed in the cause as an exhibit with the petition, it was not necessary that A. and the children (minors) should have presented their claim by next friends, the Court being

required by the Code to see that the proceeds of sale were applied to the parties entitled.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., MILLER, ROBINSON and IRVING, J.

*Hutton L. Bouldin,* for the appellant.

*Edward Duffy,* for the appellees.

MILLER, J., delivered the opinion of the Court.

Under the agreement of parties, made in this Court, the only material questions presented by this appeal are the construction and validity of the deed of the 15th of May, 1869, executed by the appellant, Elmer Hewitt, Jr., to Amelia Smith, whom he subsequently married. The questions arise in this way: Elmer Hewitt, Sr. died in 1856, leaving a will by which he directed all his property to be sold by his executors and to be divided by them among seven of his children. In a part of the property his wife, Grace Hewitt, had a life estate, and the sale and division of this he directed should be made after her death. The executors named in the will refused to act and renounced the trust. Letters of administration with the will annexed were thereupon granted to the appellant and the widow. The appellant was a child of the testator but not one of the seven among whom the property was to be divided, but after his father's death he purchased their shares from two of the seven. The widow died in September, 1878, and the appellant, the surviving administrator, refused to sell the property or to execute the trusts of the will. The other parties in interest, thereupon, in Decem-

ber, 1878, filed a petition in the Circuit Court of Baltimore
City, under section 66 of Article 16 of the Code, praying
for the appointment of a trustee to make the sale and for
the application of the proceeds to the parties entitled.
This petition sets out conveyances of their interests by
several of the parties, and among them the deed by the
appellant of the 15th of May, 1869, a certified copy of
which is filed as an exhibit. The appellant was also
made a defendant, and in his answer, after admitting the
other averments of the petition, he denies that this deed
embraces his two-sevenths interest in this property, and
he also denies its validity upon grounds which will be
hereafter stated. A decree was then passed appointing a
trustee to make the sale, and the same was duly made
and ratified. The case was then referred to the auditor
with directions to take proof as to who are the persons
entitled to the proceeds, and to state an account making
distribution accordingly. Much of the testimony so taken
relates to the validity of this deed. The Court below held
it to be valid, and that under it Amelia Hewitt, (formerly
Smith,) the appellant's wife, took a life estate with re-
mainder in fee to their children, subject to the life estate
of the appellant in case he survived her, and the appel-
lant's share of the proceeds was distributed accordingly.
From the order ratifying that distribution this appeal is
taken.

By this deed Elmer Hewitt, Jr., the grantor, in con-
sideration of the sum of five dollars "doth grant and
assign unto Amelia Smith, during her natural life," cer-
tain described leasehold and other property not involved
in this case, and " also all his *interest* in the estate of Mrs.
Grace Hewitt, *who holds during her life*, and, after her
death, it becomes the absolute estate of the heirs-at-law,
the said Elmer Hewitt, Jr., will be entitled to one-third
interest in said estate," *habendum*, " unto the said Amelia
Smith during her natural life, and from and immediately

after her death to have and to hold all of said property and estate before mentioned, unto the children begotten of the bodies of the said Elmer Hewitt, Jr., and Amelia Smith, their heirs, personal representatives and assigns, absolutely, share and share alike, as tenants in common, *subject* nevertheless to the life estate of the said Elmer Hewitt, Jr., in all of said property." Then follow covenants against incumbrances, and for further assurance.

1st. This conveyance appears to have been drawn with very little skill, but we have no great difficulty as to its construction and effect. It is unquestionably a deed *inter vivos* and not a will, and we think it is equally clear that it embraces the grantor's interest in this property. The descriptive part above quoted, in our opinion, plainly refers to, and is quite sufficient to cover, all the interest the grantor had acquired by purchase in the property in which his mother held a life estate, and which upon her death his father's will had directed should be divided among seven of his children. His obvious intent, as gathered from these words, was to convey all his interest in the estate held by his mother for her life, and there is no proof that he had any other property to which this language could be referred. To exclude the property in question from the operation of the deed would render this language wholly inoperative and infringe the rule that every deed shall be taken most strongly against the grantor. As to the estates it creates we have no doubt. That it gives in the first place a life estate to Amelia Smith is beyond dispute. Then in the *habendum clause*, an absolute estate, after her death, is given to the children subject to a life estate in the grantor. In other words the children take under this clause an absolute estate in remainder subject to the life estate of their father in case he should survive their mother. It is no objection to the estate in remainder to the children that they are not named in the premises, for it is well established and familiar law

33 v. 55.

that a person not named in the premises, or a stranger to the deed, may take in remainder by the *habendum*. *Cruise's Digest, Title* 32, *ch.* 21, *sec.* 69; 3 *Wash. on Real Prop.*, 438, *sec.* 62.

2nd. But the validity of the deed is attacked upon several grounds, which we must now consider. In the first place, the appellant alleges he was *non compos* when it was executed, by reason of excessive indulgence in intoxicating liquors. To sustain this objection it is incumbent upon him to produce clear and satisfactory proof that he was at the time in such a state of drunkenness as not to know what he was doing, or the consequences of his own acts. *Johns vs. Fritchey*, 39 *Md.*, 258. We have carefully examined the testimony on this subject, and are of opinion that it fails to make out such a case as would justify the annulment of the deed on this ground. It is next said it was procured by fraud, misrepresentation and undue influence. This, also, is purely a question of fact to be determined by the testimony in the record. The proof shows that, at the time this deed was executed, he was not married to Amelia Smith, but that they were then living together as man and wife, and had so lived for many years; that he had three children by her, who were living at the date of the deed, and that they were lawfully married within one or two years thereafter. There is no proof whatever that any fraud was practiced, or misrepresentation made to, or undue influence in fact exerted upon him, by this woman, who afterwards became his lawful wife, to induce him to execute this instrument. All that is said upon this subject by the appellant himself is that, during his sickness, she was anxious for him to make a deed or will—he does not recollect which; that his mother and nephew were also anxious he should provide for his offspring in case of his death; that his mother advised him to execute the paper, for the benefit of the woman and the children in the event of his death, but did not insist upon

it, as she knew he was stubborn, and would do nothing if she insisted. But it is argued that the immoral relation in which the parties stood at the time raises the presumption of fraud and undue influence on the part of the woman. The case of *Leighton vs. Orr*, 44 *Iowa*, 679, mainly relied on to sustain this position, differs widely in all its facts and circumstances from this. There a crafty and designing married woman, who was a notorious spiritualist and professed to be a spiritualistic medium, lived in adulterous intercourse with a man over whom she acquired great influence, and whom she controlled in a large degree in the management of his business. She received from him shortly before his death deeds of gift of a large portion of his property for her sole use and benefit, and these were set aside by the Court. But in this case the intercourse was not adulterous. The parties lived together as man and wife, and children were born to them, who, by the subsequent marriage of their parents, were under our laws made legitimate. If any such presumption as that contended for could arise from the relation existing between these parties before marriage, it is entirely repelled by the facts of the case as shown by the proof.

The character and conduct of the appellant, as disclosed by the testimony, his treatment of this woman, as well before and after the execution of the deed, as the marriage make it impossible for us to believe that she ever acquired any influence over him, or in fact exerted any towards the procurement of this conveyance.

Lastly, it is objected that the deed was not drawn by the conveyancer in accordance with the instructions he received, and it was therefore executed in mistake. This presents the only question of any difficulty in the case. It seems from the testimony of the appellant that he wanted the deed so drawn that he could have the power during his life of selling the whole property, and that he would not have signed it if he had not supposed, and if it

had not been represented to him, that such was its effect. The testimony of the conveyancer is very confused as to what instructions he actually received, and why he drew it in the form in which it appears. The wife testifies that, shortly before the deed was prepared, the appellant said to her: "I had better deed my property to you and the children, so I can have a life estate to sell if I want to; if I don't I shall sell the property, and squander the money away for whiskey;" that he then sent for the conveyancer, and, when he came, he told him he wanted the deed "drawn so that he could have a life estate in the property, and so that at his death it would come to me, and at my death to the children;" that the next day, when the conveyancer brought the deed, *he read it over to him*, and asked him if he was satisfied, to which he replied, "I am: you drew it just as I wanted it. I can sell my life estate at any time." It is true that the deed, as it stands, is not in precise conformity with what this witness states the instructions to have been; but we are by no means satisfied, from all the testimony in the record, that any mistake has been made out by such clear and satisfactory proof as the authorities require in order to enable a Court of equity to grant relief on this ground. *Groff vs. Rohrer*, 35 *Md.*, 327; *Kearney vs. Sasscer*, 37 *Md.*, 264. But should it be conceded the appellant would have been entitled to such relief if he had sought it in due time and with reasonable diligence, we are all of opinion he has lost the right by *laches*. The deed was executed on the 15th and was recorded on the 17th of May, 1869. The proof shows that within two weeks thereafter he went to the Record Office, read it, and then went to his conveyancer, who informed him as to its effect; that shortly afterwards he told a friend he had conveyed his property, and that it was fixed all right; that he kept the original deed in his trunk, and could examine it when he pleased. With this full knowledge of its contents and

effect he made no objection, complained of no mistake, and took no steps either to have it vacated or reformed until the filing of his answer in this case—a period of nearly ten years, and during all this time he was laboring under no legal or mental disability. Such delay and acquiescence, under such circumstances, must be a bar to relief on the ground of mistake. In *Beard vs. Hubble*, 9 *Gill*, 431, it was said that a party who is injured by a mistake should take steps promptly to get relief, and in that case a delay of less than eight years, with knowledge of the facts, was held to be gross *laches*.

3rd. A question of equity practice has also been relied on. The appellant contends that the proceedings subsequent to the decree must be the same as in a creditors' suit, and that his wife and his children, who are minors, should have presented their claim by next friends, and could not present it in their own right. But the answer to this is, that the deed was filed in the cause as an exhibit with the petition, and the Court is required, by the section of the Code under which the decree was passed, to see that the proceeds of sale were applied to the parties entitled, or the purposes intended by the will. With this deed thus in the cause, and thus brought to its attention, both by the petition and the answer of the appellant, the Court was bound to recognize its provisions, and not allow the proceeds to which he would otherwise be entitled to be distributed to the appellant, unless he could get rid of his own conveyance.

> *Order affirmed, and*
> *cause remanded.*

(Decided 18th February, 1881.)