# IN RE RICARDS' TRUST ESTATE.*

*Bill to Cancel Deed of Trust for Mistake—Ratification and Delay—
Medical Evidence to Show that a Woman is Incapable of Child
Bearing is Inadmissible for the Purpose of Accelerating the Vesting
of Remainders.*

Twelve years after the execution of a deed of trust the grantor therein
filed a bill seeking to have the deed cancelled upon the ground that it
did not accurately express his purpose and that at the time of the exe-
cution he misunderstood its effect. Before filing this bill the grantor
had asked a Court of equity to appoint a new trustee and had directed
the trustee to pay the income to his wife. *Held*, that such long delay
and these acts of ratification are a complete bar to the relief asked for
on the ground of mistake.

There is no presumption of law that a woman beyond a certain age is in-
capable of child bearing, nor will the testimony of medical experts be
admitted to show that a particular woman cannot become the mother
of children, for the purpose of striking down an estate in remainder
which had been limited to the children of that woman.

A deed of trust provided that the trustee should apply the income of the
property conveyed to the support of the grantor during his life, and
that upon his death leaving his wife surviving and no children born of
the marriage, then the property should be conveyed absolutely to his
wife; and upon his death leaving his wife and a child or children sur-
viving, the trustee should distribute the property between the wife and
children; and that if the grantor should survive his wife and leave chil-
dren then such children should become absolutely entitled to the prop-
erty. Some years after the execution of this deed, the bill in this case
was filed alleging that it was impossible for the grantor's wife to have
issue, that therefore there could be no persons entitled in remainder
under the deed of trust, and asking that the trust be terminated upon
the joint request of the grantor and his wife, the only possible benefic-
iary. *Held*, that since the medical evidence offered by the plaintiffs to
show that the grantor's wife could not bear children was inadmissible,
there is nothing to prove that there may not be children born who would
be entitled under the deed to the estate in remainder, and consequently
the plaintiffs are not entitled to have the trust terminated and the prop-
erty conveyed to them absolutely.

*The docket title of this case is *P. Sidney Ricards and Virginia S.
Ricards* v. *The Safe Deposit and Trust Co. of Baltimore, Trustee.*

Appeal from the Circuit Court of Baltimore City (SHARP, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE and SCHMUCKER, JJ.

*Alonzo L. Miles* and *Arthur P. Gorman, Jr.*, for the appellants.

The testimony shows that the parties to the deed of trust did not understand its legal effect upon their property rights, and consequently in the absence of a revocation clause it should be set aside upon the complaint of the grantor. *Perry on Trusts*, sec. 104; *Brown* v. *Mercantile Trust Co.*, 87 Md. 392.

Even if valid, this trust may be terminated by the mutual consent of Ricards and his wife, they being the only parties interested in the trust property, both of them *sui juris* with no possibility of anyone coming hereafter who may be interested, and the only objecting party being the trustee. *Whall* v. *Converse*, 146 Mass. 345; *Stone's case*, 138 Mass. 476; *Sears* v. *Choate*, 146 Mass. 395; *Pettingell* v. *Boynton*, 139 Mass. 244; *Culbertson's case*, 76 Pa. St. 145; *Sargent* v. *Baldwin*, 60 Vt. 17; *Hellman* v. *McWilliams*, 70 Cal. 449; *Dial* v. *Dial*, 21 Tex. 529; *Sateldo* v. *Clement*, 29 Ohio Weekly Law Bulletin, 384; *Gloyd* v. *Roff*, 2 Ohio C. C. Rep. 257; *Beach on Trusts*, sec. 761; *Perry on Trusts*, sec. 920.

The mere objection of the trustee will not prevent a termination of the trust, for, if the beneficiaries desire its termination, it will not be maintained for the benefit of the trustee. *Slater* v. *Hurlburt*, 146 Mass. 308; *Building Assn.* v. *Fitzgerald*, 8 Ohio N. P. 160; *Brown* v. *Mercantile Trust Co.*, 87 Md. 392.

The entire equitable interest having vested in Virginia S. Ricards, the trust becomes a simple or dry trust, and in such cases the *cestui que trust* is entitled to the actual possession of and enjoyment of the property or to call upon the trustee for such conveyance of the legal estate as she may direct. *Lee* v. *O'Donnell*, 95 Md. 538; *Randall* v. *Randall*, 85 Md. 430; *Hooper* v. *Felgner*, 80 Md. 262; *Owens* v. *Crow*, 62 Md. 491; *Whall* v. *Converse*, 146 Mass. 345.

The question as to whether or not there may be children born to Mr. and Mrs. Ricards is one of fact susceptible of proof as any other fact is proven ; and it is conclusively shown by the testimony in this case that Mrs. Ricards not only because of·her advanced age but also because of her diseased condition is not capable of bearing children.    *Dial* v. *Dial*, 21 Tex. 529.

- *John Hinkley* and *Louis J. Burger*, for the appellee.

The absence of a power of revocation in a voluntary settlement and the fact that the attention of the settlor was not called to that absence do not make the settlement invalid. *Kerr on Fraud and Mistake*, 179, 180; *Henry* v. *Armstrong*, 18 Ch. Div. 668; *Hall* v. *Hall*, L. R. 8 Ch. App. 437; *Bretts' Leading Cases in Equity*, 27; *Brown* v. *Mercantile Trust Co.*, 87 Md. 393.

There is a line of early English cases authorizing the presumption that a woman fifty three years of age will not bear children.    There are also a number of English cases declining to predicate a decree upon this presumption even with medical testimony where the woman is under that age.    2 *Daniel's Chancery Practice*, 1795; *Groves* v. *Groves*, 12 Weekly Rep. 45.    The later English cases however have not favored this presumption.    *In re Warren's Settlement*, 52 L. J. N. S. Ch. 928; *In re Sayer's Trusts*, L. R. 6 Eq. 319; *In re Dawson*, L. R. 39 Ch. Div. 155; *Croxton* v. *May*, L. R. 9 Ch. Div. 388.

But this doctrine has never found favor in the American Courts which uniformily hold that impossibility of having issue will never be presumed, no matter how advanced an age may have been attained.    *List* v. *Rodney*, 83 Pa. St. 492; *Flora* v. *Anderson*, 67 Fed. Rep. 184; *Read* v. *Fite*, 8 Humphries, 330; *Lawson on Presumptive Evidence*, 302; *Miller* v. *Macomb*, 26 Wend. 234; *Taylor's Medical Juris*, vol. 2, p. 303.    The admission of medical testimony as a foundation for a decree establishing that a woman will not bear children is *contra bonos mores* in the highest degree.

This appeal presents the clearest possible case of a spend-

thrift seeking to break the trust which he has created for his protection from his own improvidence and to use up his principal.

McSHERRY, C. J., delivered the opinion of the Court.

The bill of complaint which inaugurated this proceeding was filed on August 11th, 1902, in the Circuit Court of Baltimore City by P. Sidney Ricards and Virginia, his wife against The Safe Deposit and Trust Company of Baltimore. It states in substance that in 1871 the grandfather of Ricards died leaving a will by the terms of which a trust was created. By the provisions of this trust one-half of the income arising from the trust property was directed to be paid to the widow of the testator during her life and the other half to the testator's daughter, Frances Virginia, during her natural life. It was further provided that on the death of the daughter leaving the widow surviving her the share of the income bequeathed to the daughter during her life should be payable to her children living at the time of her death until they attained the age of twenty-one years. The will further declared that after the death of the widow and daughter and upon the children of the daughter reaching the age of twenty-one years the trust should cease and the property covered by it should belong absolutely to the children. In February, 1902, the daughter of the testator died leaving the plaintiff, P. Sidney Ricards, and George P. Ricards, her only surviving children; they both being above the age of twenty-one. The proportion of the mother's share of the trust estate to which the plaintiff was entitled is about $20,000. The widow of the testator is still living but upon her death the plaintiff's half of her share of the trust estate will be something in the neighborhood of $22,000 more. In August, 1890, before either share of the trust estate had come into the possession of Ricards he executed a deed of trust, which he and his wife now seek, by these proceedings, to have annulled and vacated. By that deed the plaintiff granted, assigned and conveyed to Charles Lake all the rights, title, interest and estate which the

settlor then had or might thereafter be entitled to under the provisions of his grandfather's will. This grant was upon the following trust, namely : "He shall collect the income and profits of the said trust property and shall, first of all, during the natural life of the said P. Sidney Ricards, apply and appropriate such profit and income to the proper support and maintenance of the said P. Sidney Ricards and his wife, Virginia S. Ricards, and for the proper support and maintenance as well as education of any children that may be born of their marriage, without any claim and to the exclusion of all rights that may be set up by any creditors of the said P. Sidney Ricards, and the said trustee shall return to the said grantor a full account of his disbursements, at least once a year; and after the payment of all charges, incurred by the said trustee, in the premises, any surplus income shall be paid over, into the hands of the said P. Sidney Ricards or to his order, and not otherwise—if the said P. Sidney Ricards should die leaving his said wife surviving him without children born of their marriage, the said trustee shall become discharged and the said trustee shall convey, assign and transfer all the property covered by this deed absolutely unto the said Virginia S. Ricards—but if the said P. Sidney shall die, leaving his said wife and a child or children, born of their marriage, surviving him, the said trustee shall, at once, distribute the said property between and to this said wife and child or children just as the law would dispose of it, if it were owned by him free of any trust and he had died intestate ; if he should survive his said wife and should die, leaving children of their marriage, then the said trust shall be discharged, and the said children shall become absolutely entitled to the said property covered by this deed." This deed was placed on record in the office of the Clerk of the Superior Court of Baltimore City shortly after its date. Mr. Lake having neglected or declined to act as trustee the plaintiff and his wife on the 11th of April, 1902, filed a bill in the Circuit Court of Baltimore City wherein the trusts hereinbefore mentioned were set forth; and a certified copy of the deed of trust was exhib-

ited.    It was alleged in the bill that Mr. Lake had declined to
act as trustee and that it would be necessary for a new trus-
tee to be appointed "to perform and carry out the said trusts
in said deed mentioned; " and the plaintiffs nominated the
Safe Deposit and Trust Company of Baltimore as such trustee.
On the same day the Court passed a decree by consent of the
parties, appointing the Trust Company substituted trustee
and directed the new trustee to administer the trusts created
by the deed, under the direction of the Circuit Court.    The
bill of complaint upon which this last named decree was
founded was signed by both Ricards and his wife.    In March,
1902, Ricards gave to Lake, trustee, and to his successor,
an order directing the whole of the income arising from the
trust estate to be paid to his, Ricards, wife for their joint sup-
port and maintenance.    After the events thus far narrated had
transpired the bill of complaint now before us was filed, as we
have said in August, 1902.    The grounds upon which it is
sought to set aside the deed of trust are; first, that the settlor
misunderstood the scope and purport of the conveyance in
this, that he believed it was intended to, and did in fact, trans-
fer his interest in the trust estate to his wife absolutely; sec-
ondly, that inasmuch as the possibility of his wife having
issue was extinct, and inasmuch, therefore, as there could be
no persons entitled in remainder under the terms of the deed
of trust, the trusts ought to be terminated upon the joint re-
quest of the settlor and the only possible beneficiary—the
wife—she having received from her husband shortly before
the bill was filed an absolute assignment of all his interest in
the trust property.

    It must be noted at the outset that the case is entirely free
from any charge of fraud, misrepresentation or deceit.    With
regard to the averment of mistake we deem it necessary only
to say that the evidence contained in the record fails in our
judgment to establish it.    It would serve no useful purpose to
go into an analysis of the evidence, because, even were there
room to question the accuracy of the conclusion just an-
nounced, there are two distinct acts of ratification of the deed

which would preclude the plaintiffs from now impeaching it; although the settlor might not have comprehended its full significance and effect when he executed it. Those two acts of ratification are : First, the order directing the trustee to pay the whole income to the settlor's wife ; secondly, the bill of complaint filed by the plaintiffs to procure the appointment of a new trustee. Both of these acts, of necessity, imply that the settlor and the life beneficiary were fully aware of the contents of the deed. Not the faintest protest was entered against its terms, but on the contrary the request made of the Circuit Court to designate a new trustee to carry out the trusts declared in the deed, of itself, involved a recognition and an affirmance of those trusts and was tantamount to an assertion that the deed correctly represented the intention and the object of Ricards. In the face of these emphatic acts of ratification it would be useless to further consider or discuss the averment of mistake. We may add, however, that inasmuch as the deed of trust was executed as long ago as August 4th, 1890, and no attempt was made to impeach it until August 11th, 1902, such a long delay and acquiescence, under the circumstances heretofore stated, are a complete bar to relief on the ground of mistake. *Hewitt's Appeal*, 55 Md. 517; *Beard* v. *Hubble*, 9 Gill, 431.

We now come to a much more serious and delicate question. Is it competent to the plaintiffs to prove by medical testimony that Mrs. Ricards is incapable of bearing children ? It may be conceded that where all the parties in interest are in being and all are *sui juris* they may agree to terminate the trust, and if no reason appears for denying their request, a Court of Equity will terminate the trust. *Beach on Trusts*, &c., sec. 761. Lying behind this legal proposition is the inquiry above propounded ; because, unless there is no possibility of Mrs. Ricards having issue and unless this physical condition can be lawfully proved in the way and by the means by which it has been attempted to be established in this case, all persons who might have an interest in the trust funds and who, if in being, would have such interest, are not in being,

and the rights which they would have, on coming into being, cannot be affected or interfered with. Consequently this branch of the controversy turns and depends upon the answer that may be given to the inquiry as to whether the medical proof set out in the record, and objected to by the trustee, is competent and admissible. We refrain for obvious reasons from setting forth the details of this testimony. Mrs. Ricards is 53 years of age, her husband is several years younger. There are some early English cases which upheld or sanctioned a presumption that a woman of Mrs. Ricards' age was incapable of bearing children. The more modern English cases have not adopted or relied on this presumption. *In re Dawson*, L. R. 39 Chan. Div. 155; *In re Sayer's Trusts*, L. R. 6 Eq. 319. In *Lawson on Presumptive Evidence*, p. 302, it is said: "In a number of cases the English Courts have acted on the presumption that a woman beyond a certain age is incapable of child bearing. No case can be found in the American Courts in which such a presumption has been given effect to." At best such a presumption is speculative. It is, as the very term presumption implies, a mere inference and not a certainty, and it would be exceedingly unsafe to permit property rights to depend upon so precarious a basis. But the proposition here goes further. It does not contemplate reliance on a simple presumption. Physical conditions have been testified to by medical witnesses who have expressed the opinion that there was no possibility of the life tenant being the mother of children. Can such evidence be received in a Court of justice to affect the devolution of property or to divert the course marked out for it to follow? The admission of such evidence in a case like this where the avowed purpose of the proceeding is to cut out or strike down an estate in remainder, would or might be productive of most disastrous results. If, because of physical degeneracy, atrophy or decay, a medical man may, in a controversy involving title to an estate, testify that a woman is incapable of bearing children, so that a trust deliberately created for her benefit during her life only, may be brought to an end with a view of vesting an absolute

interest in her; or, so that the vesting of a remainder may be accelerated; no one can foretell to what lengths such a precedent would lead. A surgical operation extirpating the uterus, for instance, would make it absolutely certain that no issue could be born. If proof like that now under consideration were admitted, upon what principle could evidence showing that an operation of the kind indicated had been performed, be excluded? And if not excluded what would prevent interested parties from resorting to such or similar operations, if by a resort to them a mere equitable life estate could be converted into an absolute interest? It is wholly immaterial whether the inability to bear children arises from natural or from artificial causes. It is not the cause but the fact that alone controls the question and the single fact to which the law looks is death. Upon a case of first impressions, as this case is, we are bound to examine and weigh the results that may lie beyond the narrow horizon of an isolated controversy, and to consider the moral aspects of the situation in reaching a conclusion which, when reached, may be fraught with such dangerous and demoralizing consequences. It is obviously not the province of Courts of justice and especially Courts of equity, to encourage, in any way, a resort to a method like this for defeating a settlement or terminating a trust. If the evidence set out in the record should be received, no line could be drawn restricting or marking its limits, and no satisfactory reason could be given for the exclusion of the other species to which we have alluded; and if the latter sort of evidence be admitted a Court of conscience would be made the instrument for the promotion or encouragement of acts most manifestly subversive of good morals. Even had the question as to the admissibility of this kind of testimony been decided in other jurisdictions adversely to the view we take, we should feel constrained, upon grounds of a sound public policy, to exclude the testimony in a contention like this.

In re Dawson, supra, CHITTY, JUSTICE, in dealing with a trust alleged to be void for remoteness, said: "Thereupon this argument is raised—that the parties are at liberty when

the will is brought before the Court to give other evidence of the state of thing. existing at the testator's death for the purpose of showing that some person mentioned in the will whose issue are to take can have no issue born after the testator's death. Death, of course, in the testator's lifetime proves the fact of the impossibility of having any issue born after his death, and it is said the law cannot be so one-sided as to confine itself in point of principle to the mere case of death. It cannot be suggested, it is argued, that there is any difference between showing the impossibility of issue by death and in any other way, and that consequently evidence is admissible to prove that a person named in the will whose issue are to take, and with regard to whose issue the question òf perpetuities arises, can have no issue born after the testator's death, and consequently that in this case I ought to admit evidence to show that the lady had attained that age at which it was impossible she could have issue. If I thought this point could be taken, and that evidence was admissible, I should require it to be proved as a fact, as any other fact must be proved to the satisfaction of the Court—that is to say, I should not assume by reading text-books on the subject that I had mastered the whole subject, and that I was in a position myself to determine such a question as this without the testimony of experts.

" This question, then, is whether such evidence is admissible. The question came before LOYD KENYON rather more than 100 years ago, and he decided this exact point in the case of *Jee* v. *Audley*, 1 Cox, 324. It is said that is is not a decision, but a mere *dictum*. I think it can be shown by a slight examination of the case to be a decision, and the ground of his holding that the will violated the rule against perpetuities. In that case there was a gift to the children of John and Elizabeth Jee, which was limited to take effect upon an event which was too remote according to the law as it then stood. The words used in the testator's will, which introduced this condition, were words which imported a general failure of issue. The gift, then, was to persons who could then have

been ascertained, who must have come into being within lives in being, that is to say, within the lives of John and Elizabeth Jee, because the limitation was to their children. But it was not a limitation to their children at birth, it was a limitation postponed as to vesting, when the case is examined, to the same point of time as that which was denoted by the indefinite failure of issue of the preceding taker. Consequently it ran thus—on the happening of an event which was too remote, I give to the unborn children of my kinsman, John and his wife Elizabeth, who were then living, not to those children at twenty-one, not to those children at birth, but to those children it might have been some fifty years after the death of the testator. The point of the case turned on the words "then living," and the Master of the Rolls said that if it had been to the daughters of John and Elizabeth living at the time of his will or the time of his own death, the gift would have been very good; but he decided the case on the ground that it was possible, in point of law, that John and Elizabeth should have children born after the testator's death. The argument was that there was no real possibility—I am using the words from the report itself—no real possibility of their having any children born after the testator's death, because they were both seventy years of age, and if the Master of the Rolls had accepted the proposition that there was no possibility of issue, then he must have decided that the gift was good. But this is what he says: After speaking of the law against perpetuities being one of the landmarks, he goes on, "It is grown reverend by age, and is not now to be broken in upon; I am desired to do in this case something which I do not feel myself at liberty to do, namely, to suppose it impossible for persons in so advanced an age as John and Elizabeth Jee to have children; but if this can be done in one case, it can be done in another, and it is a very dangerous experiment, and introductive of the greatest inconvenience to give a latitude to such sort of conjecture." It is clear that LORD KENYON was considering the case generally, and it is clear that if he had admitted the evidence in this case, or admitted any argument

with regard to the impossibility of issue, it would have followed that he must, and that the Court must, in every other case make an inquiry into the possibility of issue other than that which arises from death. As I pointed out in the argument, if medical testimony was admitted in this case for the purpose of showing that the lady was past child bearing, it would equally be admitted as a matter of law in the case of a woman of younger age, and it may be medical testimony could show that she was incapable of bearing a child, and evidence of that class might, therefore, consistently with the supposed principle, be adduced in the case of a woman of thirty or even younger ; and if the principle is pursued in this way, there could be no ground for rejecting evidence in the case of a man. It is unnecessary to pursue that. Of course the probability is not great, but there are cases, I take it, in which it could be proved that it was impossible for a man to have children. The Master of the Rolls appears to me to have deliberately rejected this argument on grounds which appeared to him to be sufficient, and he speaks of the danger of the experiment and the great inconvenience and the latitude which would be introduced into the law. That is a decision pronounced, as I have said, more than a century ago, and it is cited in the text-books without any adverse comment. It has also been mentioned by several eminent Judges since, and with approval. It may be that sometimes rhetorical phrases are applied even by eminent Judges to propositions of law. In *Lord Dungannon* v. *Smith*, 12 Cl. & F. 631, LORD BROUGHAM in eloquent language described it as " one of the corner stones of the law," and I understand the Lord Chancellor in the same case to have considered the decision in *Jee* v. *Audley*, 1 Cox, 324, to be one of the landmarks."

The testimony of the medical witnesses being excluded there is nothing in the record to show that there may not be children born who would be entitled under the deed of trust to the estate in remainder. It therefore follows that Mrs. Ricards is not entitled under the assignment from her husband to the entire estate if the deed of trust is not void on the

first ground we have discussed.    Having reached the conclusion that the deed is not void on that ground, none of the other questions so very ably argued by the learned counsel for the appellants need be alluded to.    The Court below dismissed the bill of complaint and thereby upheld the validity of the deed of trust.    We fully concur in that result and accordingly affirm the decree in all particulars.

> *Decree affirmed with costs, the costs to be paid out of the trust estate.*

(Decided July 2nd, 1903.)