## In re DOUGAN et al.

The trust estate under consideration in this case was created by the following language in the will of Elizabeth H. Mills: "I give to Mrs. Elizabeth A. Dougan, wife of P. M. Dougan, of Savannah, in trust for herself and her children, born and to be born, for their sole and separate use, share and share alike, the sum of forty-five thousand ($45,000) dollars, child or children of a deceased child to represent parent." The estate now consists of 260 shares of the capital stock of the Southwestern Railroad Company. Mrs. Elizabeth A. Dougan, the trustee named in the will, individually and as trustee, and the other legatees under the will, children and grandchildren of the tes-

tatrix, filed a petition and prayed that an order be granted for a division and that the trustee turn over their shares to the legatees who have attained their majority, and hold as trustee the shares of the minor petitioners, the youngest being 15 years of age, who appears by procheim ami. *Held*, that the court below properly held the trust created under the language of the will above quoted to be an executory trust and one which would become executed only upon the death of Mrs. Elizabeth A. Dougan, the trustee; inasmuch as until the death of Mrs. Dougan, under the law of this State, the possibility of issue is not extinct.

JANUARY 24, 1913.

Petition to distribute estate. Before Judge Charlton. Chatham superior court. July 21, 1911.

*Wilson & Rogers,* for plaintiffs.

BECK, J. This court is satisfied with Judge Charlton's construction of the provision of the will creating the trust and the law controlling the issue as to whether or not petitioners were entitled to the order prayed for, and with his final ruling that the order be denied. The opinion of the trial judge is found in the record, and succinctly and clearly sets forth the substance of the petition and ably discusses the law pertinent to the issues involved. His opinion in full follows, and renders further discussion of the questions under consideration unnecessary:

"This petition is brought by Mrs. Elizabeth A. Dougan individually and as trustee, P. M. Dougan, Alice A. Dougan, Margaret M. Dougan, and Frederick W. Dougan, the last three being minors who appear by procheim ami. Elizabeth A. and P. M. Dougan are husband and wife, and the others are their children, the youngest being fifteen years of age. A child, Paul, died in 1907, and P. M. Dougan and the other petitioners, save Elizabeth A., are his heirs. Under the will of Elizabeth H. Mills, who died, the trust estate now under consideration was created by the following language: 'I give to Mrs. Elizabeth A. Dougan, wife of P. M. Dougan, of Savannah, in trust for herself and her children, born and to be born, for their sole and separate use, share and share alike, the sum of forty-five thousand ($45,000) dollars, child or children of a deceased child to represent parent.' The estate now consists of two hundred and sixty (260) shares of the capital stock of the Southwestern Railroad Company; and the prayer is that an order be given for a division—the trustee to turn over their shares to those of age, holding as trustee the shares of the minor

petitioners. Mrs. Dougan is fifty-six years of age, and I am advised by the certificate of a reputable physician, professionally acquainted with her physical condition, that it is physically impossible that she will bear other children. If to a trust of this character an inflexible rule of law applies which executes it only in the event of death, then this trust is executory and the prayer of the petition must be denied. If, on the contrary, the judge is not confronted with a principle of law, but, on the theory that each case depends upon its own facts, is to hear evidence as to the child-bearing capacity of women, and determine the individual question as he best may from the lights before him, then it would be my duty to allow this division on the theory of an executed trust, if I am reasonably assured that Mrs. Dougan will have no more children. I have gone into the question presented so thoroughly as I may with the authorities accessible, realizing the importance of determining if there is a settled principle involved, and conscious of the disturbing effect should any given female, under like circumstances, revert to the capacity of those immortalized in the Book of Genesis. The principle as laid down in the common law seems clear. Thus Blackstone in his Commentaries (Book 2, p. 125) says: 'A possibility of issue is always supposed to exist in law, unless extinguished by the death of the parties, even though the donees be, each of them, an hundred years old.' So, in Coke on Littleton, p. 28, appears the dictum, 'The law seeth no impossibility of having children.' This doctrine has found acceptance in New Jersey, Pennsylvania, Maryland, Kentucky, and Tennessee. 'By the common law the possibility of issue is commensurate with life.' State v. Lash, 16 N. J. Law, 388 [32 Am. D. 397]. 'This rule has stood the test of time and received the sanction of the ages. . . Nature has fixed no certain age, by years, at which a child-bearing capacity shall begin or end. . . The presumption of law is in favor of issue, notwithstanding advanced age.' List v. Rodney, 83 Pa. St. 483. In Garner v. Dowling, 11 Heisk. 52, it is said that the contingency is determined only by death. Bigley v. Watson [98 Tenn. 353], 39 S. W. 525 [38 L. R. A. 679], is to the same effect, as is Bearden v. White [Tenn.], 42 S. W. 476, wherein it is held that the possibility of children persists so long as the woman has life. In Richards et ux. v. Safe Deposit etc. [97 Md. 608], 55 Atl. 384 [63 L. R. A. 145],

the subject is discussed at length, and on page 387 the court says: 'It is wholly immaterial whether the inability to bear children arises from natural or artificial causes. It is not the cause, but the fact, that alone controls, and the single fact to which the law looks is death.' In this case all evidence as to incapacity was declared inadmissible. To the same conclusion are May *v.* Walter's Ex'rs [Ky.], 97 S. W. 423; and Bailey, trustee, *v.* Bailey [Ky.], 97 S. W. 810, in both of which cases the woman was upward of sixty. It would seem from these authorities that the principle based upon the common law maintains the executory nature of the trust until death supervenes; the death of the husband, if the estate is limited to their offspring; the death of the wife, if limited to her offspring.

Is there any authority in Georgia which makes the capacity of the woman dependent, not upon death, but on the testimony offered in each case? The difficulty I encounter is that the Georgia cases do not adopt or repudiate the principle of the common law in so many words. There are expressions looking each way; but inasmuch as a decision on the abstract principle was not imperative in any given case, the expressions are obiter. In *Brady* v. *Walters,* 55 *Ga.* 27, it is said: 'The trust was not executed, at least until all probability of the birth of any more children of Mary Jane by Martin J. Brady had become extinct. In relation to that point in the case, the evidence in the record is silent.' It would seem from this decision and the headnote, that the children referred to were to be children begotten by Martin J., which destroys the suggestion as to the termination of the trust because of the want of probability of the birth of other children to the woman, since the death of the husband, in that event, would execute the trust. Evidently the trust in *Boyd* v. *England,* 56 *Ga.* 598, was of the same kind and concerned the children of the present husband and wife. The headnote clearly indicates this when it declares that the trust did not become executed while the coverture subsisted, which is also the language of the text (p. 599). The added language, 'It may be that more are yet to be born,' is not to be considered controlling as the announcement of a principle or policy, for, the age and condition of the wife not being given, it is not to be gathered that the Justice had anything more in contemplation than the precise condition there presented, where the trust

might be executory no matter what the general principle was. In *Sanders* v. *Houston Guano Co.*, 107 *Ga.* 49 [32 S. E. 610], proof was tendered and rejected that the woman was fifty-two years of age and in such a physical condition that she could never possibly bear another child. The court waived the point, and, so far from deciding the general doctrine, did not even consider it, attention being called· to other provisions which continued the executory character of the trust. In *Taylor* v. *Brown*, 112 *Ga.* 758 [38 S. E. 66], coverture is involved, and the general doctrine is not considered. The court remarks, 'Conceding as matter of argument that the chances were against the defendant in fi. fa. having any more children, it does not follow that the trust is not still executory.' The testimony offered as to the question of future issue was uncontradicted, and was, says the court, 'positive and convincing.' In *Clarke* v. *East Atlanta Land Company*, 113 *Ga.* 21 [38 S. E. 323], the· point was really not involved. That was a proceeding to reform a deed, the beneficiaries being unquestioned, the husband dead, and the trust limited by the coverture. The decision turns on the form of verdict, which in the opinion of the court went further than the deed warranted. I can not deduce from these Georgia cases any authoritative announcement which will justify me in setting aside the precedents of hundreds of years. The question is full of dangerous possibilities. Whatever hardship may be worked in special instances, it would work great mischief if no settled rule existed to guide and determine the decision of judges on such a subject, leaving each case to the varying impressions to be produced by testimony. It is further urged, that granting children may be born to Mrs. Dougan hereafter, they would have no interest in the property—the words 'to be born' meaning such children as may have been born between the making of the will and the death of the testatrix; and to this conclusion is cited Heisse *v.* Markland, 2 Rawle, 274 (21 Am. Dec. 455). The authority cited is in line with the contention, but it is not conclusive by any means. The court seems to have regarded the period of distribution fixed by the majority of the cestui que trustent. Why this reasoning should not also apply to children subsequently born is not altogether clear. Be this as it may, it is not the Georgia rule. In *Toole* v. *Perry*, 80 *Ga.* 681 [7 S. E. 118], the trust was to daughters and their children, 'free from the

control, debts, and liabilities of their present or any future husband.' The court says: 'We think, from the language of the will, that it was the intention of the testator that all of the children of his daughter M., born and to be born, should be entitled to participate in the property. He uses the words "free from the control, debts, and liabilities of their present or any future husband;" and in referring to the husband as he does here, it is to be inferred that he had in view the probability, naturally flowing from the relation of husband and wife, that other children would be born to his daughters than those who might be in life at the death of the testator. . . And the reasonable inference is, that, in referring to his daughters' children, he meant not only those who were alive at the time of his death, but such as might be born thereafter, and who would be equally near to him and equally entitled to be objects of his bounty.' It will be observed that in the case at bar there is no fixed time of distribution as in the Heisse case, and that what was inferred in the *Toole* case is expressed in so many words—'born and to be born.' In *Baird* v. *Brookin,* 86 *Ga.* 709 [12 S. E. 981, 12 L. R. A. 157], the trust was to B. and her children (none being in life at the time of the making of the deed). The court held this language did not include children born subsequent to the execution. In differentiating the case from those in 55 *Ga.* 25, and 56 *Ga.* 598, the court, observing that in those cases were contained the words, 'children born and to be born,' says, 'Of course in these cases the intention was clear, because it was plainly expressed.' It would, therefore, seem that the Georgia law gives, under such language, an interest to unborn children; and certainly the testatrix may be considered as having as much interest in unborn grandnieces as in unborn great-nieces, the succession of the latter being provided for by the will.

"It so happens that this is the second application presented to me within a week, involving the main contentions here, so that the situation is not isolated. The prayer of the petition is denied."

*Judgment affirmed. All the Justices concur.*