[L. A. No. 4368. In Bank.—February 3, 1920.]

# ANNIE K. FLETCHER et al., Respondents, v. LOS ANGELES TRUST AND SAVINGS BANK (a Corporation), Appellant.

[1] TRUST—TERMINATION BEFORE FIXED PERIOD.—Where the beneficiaries of a trust are all *sui juris,* and seek the termination of the trust, a court of equity may terminate the same even if the period for such termination fixed by the instrument creating the trust has not yet arrived.

[2] ID.—LIMITATIONS OF RULE.—Where the trust is a spendthrift trust, or where the settler made known, expressly or plainly, his intention that such power should not exist, or where discretion as to the amount of the income to be devoted to the needs of the beneficiary is vested in the trustee, or where the effect of the trust is to direct accumulations of the income until a fixed time, the trust cannot be terminated by the court during the period fixed by the trustor, even where all the beneficiaries are *sui juris* and consent thereto.

[3] ID.—TRUST CREATED BY WILL—NATURE AND CHARACTER OF INVESTMENTS — DISCRETION OF TRUSTEE—CASE WITHIN GENERAL RULE.—Where the only discretion vested in the trustee in a trust created by a will is as to the nature and character of the investments to be made, such provision is insufficient to take the case out of the general rule.

[4] ID.—TERMINATION OF TRUST—DISCRETION OF COURT.—The termination of such a trust is discretionary with the court.

[5] COMMON LAW OF ENGLAND — CONFLICT BETWEEN AMERICAN AND ENGLISH DECISIONS—RULE.—The enactment by the legislature in 1850 and the re-enactment of 1872 of the statute making the common law of England the rule of interpretation in this state ought not to be taken as requiring the courts to follow the current decisions of English courts where such decisions differ from the American rule, for these decisions were not in contemplation by the legislature when the statute was adopted.

[6] TRUST—TERMINATION—STERILITY OF BENEFICIARY—CONFLICT OF DECISIONS—ADOPTION OF AMERICAN RULE.—In view of the con-

---

1. Termination of trust by agreement of all parties interested, note, Ann. Cas. 1915B, 723.

Power of court to hasten enjoyment of trust fund, note, 46 L. R. A. (N. S.) 43.

6. Doctrine as to possibility of issue extinct as affecting termination of trust, note, 48 L. R. A. (N. S.) 873.

flict between the American and English decisions on the subject of the termination of a trust by a court of equity upon the presumption that the beneficiary has ceased to have the capacity of child-bearing, the American rule that it is never presumed that a woman, no matter how aged, is incapable of bearing children, is adopted.

[7] ID.—TRUST UNDER WILL—AGE AND STERILITY OF BENEFICIARY—ERRONEOUS TERMINATION.—A decree terminating a trust created by a will which provided for the payment of the income of the trust fund to the daughter of the trustor during her lifetime and for an equal division of the fund with all accumulations upon her death between her children, was erroneously terminated by a court of equity at the instance of the daughter and her only child during her lifetime, on the sole ground that by reason of the age and sterility of the daughter, there was no possibility of her having any more children.

[8] ID.—APPEAL—RIGHT OF TRUSTEE.—The contention that the trustee cannot raise the question, or appeal, by reason of a lack of interest in the subject matter is not well taken.

APPEAL from a judgment of the Superior Court of Los Angeles County. George H. Cabaniss, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Cates & Robinson, O'Melveny, Millikin & Tuller and Hewlings Mumper for Appellant.

Kimball Fletcher for Respondents.

Heller, Powers & Ehrman, Samuel S. Stevens and John W. Rankin, *Amici Curiae.*

WILBUR, J.—This is an action in equity brought by the plaintiffs to terminate a trust. The defendant is the trustee. The theory on which the action was brought is that Annie K. Fletcher, the mother, and Kimball, the son, plaintiffs, are the sole beneficiaries of the trust, and therefore are entitled to have it terminated. A decree was rendered terminating the trust and the defendant appeals. The trust was created by the following provision in the will of George C. Kimball, the father of Annie K. Fletcher:

"I give, devise and bequeath one of said four equal parts into which the residue and remainder of my estate shall be

divided to Charles M. Wilson of the city of Grand Rapids, Michigan, in trust, nevertheless, for the following purposes, viz.: he shall invest and keep invested the trust fund hereby created in such manner as he deems safe and desirable and pay the net income therefrom semi-annually or oftener, if convenient, to my dear daughter, Annie K. Fletcher, of the city of Minneapolis, Minnesota, so long as she shall live. Upon her death, I give, devise and bequeath the trust fund created by this clause of my will with all accumulations therefrom, if any, to the children of said Annie K. Fletcher, to be equally divided among them by said trustee, share and share alike.  And I hereby give full power and authority to said Charles M. Wilson to sell and convey any and all property which shall at any time constitute a part of said trust fund, the proceeds therefrom to be invested as hereinbefore directed.''

Annie K. Fletcher has one child, Kimball Fletcher, and it is claimed that by reason of her age and sterility there is no possibility of her having any children other than the plaintiff, Kimball Fletcher, and that therefore she and her son represent the only possible beneficiaries under the will. The finding was in accordance with this allegation.

[1]  Where the beneficiaries of the trust are all *sui juris,* and seek the termination of a trust, a court of equity may terminate the same even if the period for such termination fixed by the instrument creating the trust has not yet arrived. (*Eakle* v. *Ingram,* 142 Cal. 15, [100 Am. St. Rep. 99, 75 Pac. 566], and authorities cited; Beach on Trusts, secs. 705, 761; 39 Cyc. 99; *Angell* v. *Angell,* 28 R. I. 592, [68 Atl. 583].)  [2]  Where the trust is a spendthrift trust (*Nichols* v. *Eaton,* 91 U. S. 716, [23 L. Ed. 254, see, also, Rose's U. S. Notes]), or where the settler made known, expressly or plainly, his intention that such power should not exist (*Cowie* v. *Strohmeyer,* 150 Wis. 401, [136 N. W. 956, 139 N. W. 778]), or where discretion as to the amount of the income to be devoted to the needs of the beneficiary is vested in the trustee (*Estate of Hemphill,* 180 Pa. St. 95, [36 Atl. 409]; *In re Stewart's Estate,* 253 Pa. St. 277, [Ann. Cas. 1918E, 1216, 98 Atl. 569]), or where the effect of the trust is to direct accumulations of the income until a fixed time (*Claflin* v. *Claflin,* 149 Mass. 19, [14 Am. St. Rep. 393, 3 L. R. A. 370, 20 N. E. 454]; *Shelton* v. *King,*

229 U. S. 90, [57 L. Ed. 1086, 33 Sup. Ct. Rep. 686, see, also, Rose's U. S. Notes]), the trust cannot be terminated by the court during the period fixed by the trustor, even where all the beneficiaries are *sui juris* and consent thereto. There is nothing, however, in the trust created by the will of George C. Kimball which brings it within any of the foregoing well-recognized limitations. [3] The only discretion vested in the trustee is as to the nature and character of the investments to be made. Such provision is insufficient to take the trust out of the general rule. (*Simmons* v. *Northwest Trust Co.,* 136 Minn. 357, [L. R. A. 1917F, 736, 162 N. W. 450].) [4] The termination of the trust is, however, discretionary with the court. (*Gray* v. *Union Trust Co.,* 171 Cal. 637, [154 Pac. 306].) For the purpose of invoking such discretionary power no evidence was produced and no allegations made with reference to the facts and circumstances surrounding the testator at the time of the execution of the will, or as to the circumstances of the beneficiaries or the amount of the trust property at the time of the application to the court. There is no allegation or proof of any change in conditions which require the interposition of a court of equity nor any indication that any condition has arisen which was not anticipated by the testator in drawing the will. In short, the case rested exclusively upon the theory that the beneficiaries of the trust being *sui juris* and consenting thereto, the trust should be terminated as a matter of right. The only evidence adduced was to prove that all the interested parties were before the court and this consisted of testimony as to the age and sterility of Mrs. Fletcher, for the purpose of proving the impossibility that she should bear other children. Appellant, however, contends that such evidence was inadmissible, for the reason that there is in law a conclusive presumption that a woman is capable of bearing children as long as she lives. For the purpose of the application of the rule against perpetuities it is uniformly held in England and in this country that a possibility of issue is commensurate with life. (2 Blackstone, 125; *State* v. *Lash,* 16 N. J. L. 388, [32 Am. Dec. 397]; *List* v. *Rodney,* 83 Pa. St. 483; *In re Dawson,* L. R. 39 Ch. D. 155.) This conclusive presumption of the possibility of issue has also been rigidly applied in equity by the courts of Georgia, Ken-

tucky, Maryland, Rhode Island, Tennessee, and Texas, as a basis of a refusal to terminate trusts where the children of persons still living were to become entitled to the *corpus* of the property upon its termination, as in this case. (*In re Dugan* (1913), 139 Ga. 351, [Ann. Cas. 1914B, 868, 48 L. R. A. (N. S.) 868, 77 S. E. 158] ; *In re Ricardo,* 97 Md. 608, [63 L. R. A. 145, 55 Atl. 384] ; *Garner* v. *Dawling,* 58 Tenn. 49; *May* v. *Bank of Hardinsburg,* 150 Ky. 136, [48 L. R. A. (N. S.) 865, 150 S. W. 12] ; *Quigley's Trustees* v. *Quigley,* 161 Ky. 85, [170 S. W. 523].) The foregoing cases are cited with approval in *Reeves* v. *Simpson* (Tex. Civ. App.), 182 S. W. 68, a case involving a spendthrift trust for a man. In Rhode Island (*Bowlin* v. *Rhode Island Hospital Co.,* 31 R. I. 289, [140 Am. St. Rep. 758, 76 Atl. 348]), it has been held that evidence of the age or sterility of a woman cannot be introduced in such a case. The reasoning of these courts, which need not be here repeated, place the inadmissibility of such testimony upon grounds of public policy, applicable with full force to such equitable proceedings. These courts cite and apply the conclusive presumption stated in Blackstone (2 Black. 125), as a basis of decision in such equitable proceeding. The English decisions have rigidly enforced this rule in cases involving perpetuities. *In re Dawson,* L. R. 39 Ch. D., *supra,* it was said: "A possibility of issue is always supposed to exist in law, unless extinguished by the death of the parties, even though the doncees be each of them an hundred years old." In that case, however, it was recognized that a different rule prevails with reference to the distribution of trusts in the equity court. In that regard it is there stated: "Another argument was adduced with reference to what appears to be the practice of the court of chancery in former times and of the chancery division of the high court in the present day with reference to payment out where there is a married woman whose children are to take and the lady has attained a certain age. Those are cases, I think, when examined from the beginning down to the present time, in which the court does not assume the impossibility of issue, but as a mere matter of convenience of administration, regards the high degree of improbability, and it has come now to be fixed somewhere about the age of fifty-four, although the circumstances may still be inquired into. But with regard

to the rule against perpetuities a high degree of probability or improbability will not do. . . . The practice of the court at one time, say about the first quarter of this century, was to require security, and that went on for some time afterward, and in the case of *Leng* v. *Hodges* (1), mentioned by Sir Arthur Watson, money was paid out on the assumption that the lady, who was sixty-nine years of age, would not have any issue, but security was taken. Subsequently, in 1845, I think, security was taken and the lady's age was sixty-four. But after a time the court has thought it might dispense with security and act upon so high a degree of improbability that it did not require, as was once the practice, an undertaking—even sometimes the undertaking of a married lady—to refund. I take it, if there were children afterward born, they would still be in a position, notwithstanding the order, to claim what had been unjustly taken from them. I mention those cases in order to state my opinion that they have not established the principle of the impossibility of the lady having issue. They are 'only illustrations of a convenient rule of practice in the administration of justice.'' Trusts have been terminated in the chancery courts of England upon the presumption that a woman has ceased to have the capacity of child-bearing. In the recent case of *White* v. *Edmond* (1901), L. R. 1 Ch. D. 570, Buckley, J., justice of the high court, attached to the chancery division, held that a widow of fifty-six years and three months is to be taken as past the child-bearing age, and cites cases in which a widow of fifty-five years and four months, who never had any children, and a spinster fifty-three years and nine months, and a lady forty-nine years and nine months, who had been married twenty-six years and never had a child, and a spinster fifty-four and another of fifty-six, had been taken to be beyond the child-bearing age. It was, therefore, held that the fund could be distributed. (See, also, English cases cited in note to 37 N. J. Eq. 502; and note 1, 16 Cyc. 1073.) We must arrive at our conclusion in view of this direct conflict between the American and English decisions on the subject of a termination of the trust by a court of equity.

Section 4468 of the Political Code, enacted in 1872, reenacting the act of April 13, 1850 (Stats. 1850, p. 219), provides that the common law of England, so far as not repug-

nant to or inconsistent with the constitution of the United
States or the constitution or laws of this state, is the rule
of decision in all the courts of this state.   If, therefore, we
should accept the modern decisions of the English courts
upon this question and ignore the decisions of our sister
states, we would be constrained to hold that the conclusive
presumption invoked by appellant did not apply, and that
the trust might be terminated whenever the court was satis-
fied that Mrs. Fletcher had reached a physical condition
rendering it impossible for her to bear children.   We are
not, however, to look solely to the English decisions for
the purpose of determining "the common law of England."
Most of our sister states base their decisions upon that com-
mon law.   Those decisions declarative of the common law
are evidence of that law.   As was said in *Lux* v. *Haggin*,
69 Cal. 384, [10 Pac. 749] : "The expression 'common law of
England' designates the English common law as interpreted
as well in the English courts as in the courts of such states
of the Union as have adopted the English common law. . . .
It was not the common law 'as the same was administered'
at a certain date that was adopted, but the common law.
Indeed, the administration of the law in particular cases
may be a very different thing from the law itself. . . . The
statute adopts the common law of England, except where
inconsistent with the constitutions and statutes, and there
can be no good reason why, to ascertain the common law of
England, we should not refer to the decisions of English
and American courts (in states where the common law pre-
vails) rendered before and subsequent to the date of the
statute."   In *Seymour* v. *McAvoy*, 121 Cal. 438, 442, [41
L. R. A. 544, 53 Pac. 946, 947], the court was confronted
with a situation with reference to trusts in personalty, where
the American courts had departed from the doctrine of the
English courts upon the rights of creditors and beneficiaries
with reference to a spendthrift trust.   In that action it was
said: "As there was not at the testator's death any statute
in force in this state on the subject, this case must be de-
cided in accordance with the rules of the common law; and
in ascertaining those rules we may look as well to the de-
cisions in other states of this Union possessing the common
law as to those of the English courts."   (Citing *Lux* v.
*Haggin, supra*.)   This court thereupon adopted the rule of

the American courts in contradistinction to the rule in the English courts, saying: "By the great weight of authority in America, it is settled that the author of a trust to pay to or apply for the benefit of another the income of property, or a portion of such income, may lawfully provide that the interest of the beneficiary shall not be assignable, or shall not be subject to the claims of his creditors." (Citing among other cases *Nichols* v. *Eaton*, 91 U. S. 716, 725, [23 L. Ed. 254, see, also, Rose's U. S. Notes], in which the supreme court of the United States expressly declined to follow the English chancery court in determining what was the common law.) In cases of a square conflict between modern English and modern American interpretation of the common law we should follow the American exposition. **[5]** The enactment by our legislature in 1850 and the re-enactment of 1872 of the statute making the common law of England the rule of interpretation in this state ought not to be taken as requiring us to follow the current decisions of English courts where these decisions differ from the American rule, for these decisions were not in contemplation by the legislature when the statute was adopted. We should follow those rules as interpreted and applied by the American states where there is a conflict. This was the course pursued by the supreme court of the United States in *Shelton* v. *King, supra.* The departure of the American courts from the English rule is well recognized. In 16 Cyc. 1073, it is said: "In England courts frequently act upon the inference that women under various circumstances of age and other conditions have become incapable of bearing children. On the other hand, in the United States a woman is assumed capable of child-bearing at any age of adult life." The American rule is thus stated in the Encyclopedia of Evidence (volume 2, page 848) : "On the general subject of the inheritance and devolution of estates, it is never presumed that a woman, no matter how aged, is incapable of bearing children." **[6]** While we are thus at liberty to adopt either the American or the English rule, in view of the unanimity of the American decisions, and for the reasons stated, we are constrained to hold to the rule of decision of the American courts. We are the more ready to do this, as such an interpretation can wrong no one and the result of such a rule is merely to enforce the clearly expressed inten-

tion of the trustor, and is more in accord with the American law concerning trusts in personalty. (*King* v. *Shelton, supra; Seymour* v. *McAvoy, supra.*) [7] It follows that the decision appealed from was erroneous. [8] The contention that the trustee cannot raise the question, or appeal, by reason of a lack of interest in the subject matter is not well taken. (*Gray* v. *Union Trust Co., supra; King* v. *Shelton, supra.*) Even in the case of *Eakle* v. *Ingram, supra,* relied upon by respondent for a dismissal, the appeal was not dismissed, but determined upon its merits.

Judgment reversed.

Lennon, J., Shaw, J., Olney, J., Angellotti, C. J., Lawlor, J., and Kerrigan, J., *pro tem.,* concurred.

Rehearing denied.

All the Justices concurred.