## LAURA V. THORNE, et al.,
### *vs.*
## ANNIE B. THORNE, et al.

*Wills: construction; trusts; termination. Unexpected condi-*
*tions: unprovided for in will; on unanimous petition of*
*the parties entitled, equity may terminate trust.*
*Female minor: release to trustee; Code, sec-*
*tions 7 and 8 of Article 79.*

A will devised all the residue of the estate to trustees, in
trust, to be held by them to collect the income and apply the
same to the payment of all expenses and indebtedness due there-
on, with power to sell and reinvest, etc., the property to be so
held in trust until it should be worth $20,000; then to be sold
and divided and distributed in ten equal shares; the expenses
were greater than the income, and part of the property was sold
to reduce the indebtedness, and the remainder was worth less
than $17,000. *Held,* that in view of such conditions, not pro-
vided for by the testator, and in the absence of any indication
in the will that the property, after payment of the debts, should
be held for a possible enhancement in value, that might increase
it to $20,000, a court of equity should comply with the unani-
mous request of the parties entitled, that distribution be made
without delay.                                    p. 126

Under sections 7 and 8 of Article 79 of the Code, authorizing
any female over eighteen years of age to execute a release to any
trustees for the proceeds of a sale, and section 10, providing
that such release should be a valid discharge, the fact that one
female petitioner, out of many, was less than eighteen years old
when the petition was filed for the distribution of the trust
estate, does not require that there should be a continuation of
the trust estate until she should arrive at the full age of 21
years, when she would reach the age of 18 years shortly after
the entry of the decree.                          p. 127

*Decided January 14th, 1915.*

Appeal from the Circuit Court of Baltimore City. (Daw kins, J.)

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Robert Biggs* and *Harry N. Abercrombie,* for the appellant.

*Geo. E. Robinson* (with whom was *O. Parker Baker* on the brief), for the appellee.

Urner, J., delivered the opinion of the Court.

By the will of John Thorne, of Baltimore, who died in June, 1905, the residuary estate of the testator was disposed of as follows:

"I give, devise and bequeath unto my hereinafter named executors all the rest and residue of my estate, both real, personal and mixed, to be held by them in trust and confidence, to collect the income and to apply the same to the payment of all expenses and indebtedness due on said property, with power in my said executors to sell and reinvest the proceeds when an advantageous offer is made for any of my said property so held in trust by them. It is my will and desire that said executors shall hold said property in trust until all of the indebtedness is paid in full, including all mortgages heretofore given by me; and it is also my will that my nephews, Frank Thorne and John Thorne, shall execute a deed of the property I gave them to my hereinafter named executors, and that the indebtedness due on their property shall be paid by my estate, but should they refuse to deed the property to my executors, then they are to assume the mortgages

now on the same and no portion of which is to be paid by my estate. After all of the indebtedness is paid or at a time when the net proceeds of the property held in trust by my executors may be sold for twenty thousand ($20,000) dollars or more, it is my will and desire that the same be sold and divided into ten (10) equal shares."

The will then bequeathed the ten shares to legatees who were designated by name.

According to the first administration account of the executors, filed on June 18th, 1907, the residuary estate which they were to hold in trust for the purposes stated in the will consisted of five leasehold properties having an appraised value of $14,800.00. A second account, filed in the following February, showed that one of the properties had been sold at an advance of $500.00 over the appraisement, the *corpus* of the estate being thus increased to $15,300.00. The rents collected to that period amounted to $2,663.11, but the disbursements, which included the payment of $1,000.00, on account of one of the mortgages and heavy expenditures for repairs and improvements, aggregated $6,560.68. This exceeded the income received to the extent of $3,897.57. The deficiency thus produced was charged to the *corpus,* with the result that the proceeds of the leasehold property which had been sold amounting to $3,750.00, were absorbed and an over-payment of $147.57 was reported. The *corpus* of the estate then remaining consisted of four leasehold lots and buildings appraised at $11,550.00.

The third administration account was filed five years later, in January, 1913. It charged the appellee as executor, his associate having resigned, with the appraised value of the unsold properties belonging to the trust and with $15,738.89 as collections of rent since the last preceding account. The disbursements credited exactly equaled the amount of the income and represented the payment of a $2,000.00 mortgage and annual expenses, repairs and improvements as fol-

lows: for 1908, $1,960.71; for 1909, $2,397.80; for 1910, $2,602.45; for 1911, $3,023.90; and for 1912, $3,754.03.

In November, 1913, a fourth account was filed. From this it appears that one of the properties had in the meantime been sold for $15,000.00, which was $11,250.00 in excess of its appraisement. This would have increased the *corpus* to $22,800.00, but a mortgage of $5,098.35, including interest, was paid out of the proceeds of the sale, and the disbursement of $3,660.24 for repairs and other expenses having exceeded the rent and other receipts of $2,708.70 by the sum of $951.54, this deficiency also was charged against the principal funds, and the estate was then reported to consist of three leasehold properties, appraised at $7,800.00, and $9,030.11 cash in bank, making a total of $16,830.11. The payment of the mortgage last referred to completed the settlement of all the indebtedness due and collectible from the estate.

On September 25, 1913, a number of the legatees of the residuary estate filed a petition in the Court below invoking its equitable jurisdiction over the trust and praying for a construction of the will upon the theory that the time had arrived, under its provisions, for a termination of the trust and distribution of the estate among the persons entitled. All of the living legatees, representing eight of the ten shares into which the proceeds of the trust property were to be divided, have joined in the pending application. The other shares were bequeathed to two nephews of the testator who had died intestate since the probate of his will. One of these legatees left a widow and children, who have all united in the petition, and the other died without issue, but leaving a widow who is the administratrix of his estate and who also was made a co-petitioner under an order of the Court. The appellee, as executor, is defendant in the proceedings, and by his answer he opposes the request for the assumption of jurisdiction over the trust by a Court of equity, and denies that the estate is now distributable under the will, asserting

on the contrary that by its terms the distribution is not to occur until the estate is worth $20,000.00, to which value it has not yet increased.

The essential facts of the case, consisting mainly of those we have already recited, were established by an agreement of the parties which appears in the record. There was also testimony proving the death and intestacy of the two deceased legatees and the relationship and identity of their next of kin, all of whom are above the age of twenty-one years, except a daughter of one of the decedents who was nearly eighteen years old when the case was presented below for determination. By its decree the Court assumed jurisdiction of the trust and appointed the appellee to hold and administer the estate in the capacity of trustee, but announced its conclusion that the beneficiaries under the will were not entitled to have the trust terminated at that time for the reason that the testator intended that the distribution should be deferred until the estate could be sold for $20,000.00, and there was no proof to show that this amount could now be realized, or that it may not have the requisite value within a reasonable period, and for the further reason that one of the petitioners was then an infant and, therefore, incapable of voluntarily consenting to such a decree as the petition proposed. The trustee was accordingly directed to hold the estate for further administration under the terms of the will, and the distribution sought by the petitioners was denied. The appeal requires us to review the decree in so far as it refused to direct an immediate division of the estate.

It is argued on behalf of the appellants that as the will directed the executors to hold the residuary estate until the indebtedness should be paid in full, and as that result has now been accomplished, the time contemplated for the termination of the trust has arrived. Apart from this theory, based upon a construction of the will, it is contended that the special circumstances of the case are such as to justify a present distribution.

The trust imposed by the will was that the residuary estate should be held and the *income* applied to the payment of all expenses and debts due on the property, and it was provided that this trust should continue until all of the indebtedness should be paid in full. It was the evident design of the testator that the estate should be kept intact and only the income used for the payment of the debts. While the executors were given authority to sell any of the property, if they should receive an advantageous offer, such a sale was expressly stated to be for the purpose of re-investment. The testamentary plan appears to have been to relieve the estate of indebtedness so that its clear value should enter into the shares provided for the residuary legatees. If this condition had been produced by the application of the *income,* as directed by the will, the object of the trust would have been realized. One of the alternative events would then have occurred which the testator designated as the occasion for the sale of the property and the division of the proceeds. It was plainly not the intent of the will that after the indebtedness had been completely satisfied out of the income, the estate should nevertheless continue to be held in trust until such time as it might be sold for $20,000.00. There is no provision for the application of the income after the debts to which it was to be devoted were fully paid, nor is there any direction that it shall be accummulated until the estate equals the amount just mentioned. The language used leaves no doubt that it was from a *sale of the property* that the sum stated was to be derived, if at all, and that it was from an enhancement of property value that a possible increase of the estate to $20,-000.00 was anticipated. The idea of the testator, as we understand his will, was that the income from the trust estate, which seems to have amounted to not less that $2,500 per annum at the inception of the trust, should be applied to the payment of the indebtedness of $8,000 on the property, with the reasonable expectation that this purpose would be fully accomplished within a few years, but if, while the debts were being thus gradually extinguished by the applica-

tion of the income, an opportunity should be presented for the sale of the property at a price which would produce for the estate "net" proceeds of $20,000, clear of the indebtedness, the sale should then be made and the provisions as to the distribution carried into effect.

The trust has now been in existence for more than seven years, but neither of the alternative events upon which its termination is made to depend has yet transpired. While the indebtedness has been fully paid, it has not been satisfied out of the income. In fact the funds derived from that source were insufficient to meet the expenses of the trust properties. If there had been no property sales, it is apparent that the debts would have remained unpaid. Their payment out of the proceeds of the sales was doubtless proper under the circumstances and may have been a necessary incident of the transfer of title, but the adoption of this method and means of discharging the indebtedness did not gratify the primary condition prescribed by the will for the termination of the trust. In reference to the second alternative it need only be observed that while the sales disclosed a substantial increase in the value of the properties, yet there is nothing in the record to show that the estate is now worth $20,000.00, or that it could at any time have been sold for that amount clear of the indebtedness.

It is manifest, therefore, that a situation has developed which the testator did not anticipate. Instead of the income being available and actually used for the payment of the debts, it has been absorbed, together with a part of the corpus, by the expenses of the estate, including the cost of substantial repairs and improvements. If only a small proportion of the annual income had been applied to the purpose which the testator had in mind, there would have been a sufficient reduction of the indebtedness to have admitted of the payment of the balance out of the proceeds of the property sold in 1913, and to have yet left a corpus of at least $20,000 for distribution according to the terms of the will. It was certainly never within the testator's contemplation

that the whole of the considerable income of the estate, and
large appropriations from the corpus, would be required for
the fixed charges and maintenance of the trust properties, and
that an enhancement of nearly $12,000 in their value, as
shown by the sales, would produce after an administration
of seven years and the payment of an indebtedness of only
$8,000, a net increase of only $2,000 over the original valu-
ation.

The unexpected conditions which have thus developed are
responsible for the inquiry now presented as to the future of
the trust.    There is no longer any occasion to utilize it for
the payment of debts, as they have all been satisfied, and
there is no authority in the will for the application of the
income to other objects or for its accumulation.   Moreover,
as the expenses of the trust property have continued to ex-
ceed the income, there would be no certainty of an augmenta-
tion of the corpus from that source.   The important question
to be answered, in view of these unforeseen and unusual con-
ditions, is whether the trust should be maintained for an
indefinite period in order that a possible enhancement of
value may increase the estate to $20,000, or whether, in the
absence of any indication in the will that the testator desired
the estate to be held for that·purpose after the debts were
paid, the unanimous request of the parties entitled that the
distribution be made without further delay should be grati-
fied.   In our opinion the latter course, under all the circum-
stances of the case, is the just and proper one to be pursued.
Such action is not inconsistent with the testator's intention,
as we interpret the will, and it avoids the hardship of de-
priving the legatees of the present enjoyment of their estate
for the mere purpose, against which they all protest, of af-
fording still further time for a possible increase in its value.
A Court of Equity has undoubted authority to declare a
trust terminated under these exceptional conditions.   39
*Cyc.* 99; 2 *Perry on Trusts* (6th Ed.), sec. 920; *Donaldson
v. Allen,* 182 Mo. 626; *Tilton* v. *Davidson,* 98 Maine, 55;
*Sears* v. *Choate,* 146 Mass. 395; *Welch* v. *Episcopal Theo-*

*logical School,* 189 Mass. 108; *Culbertson's Appeal,* 76 Pa. St. 145.

While one of the female petitioners, as previously stated, was less than eighteen years old when the case was before the Court below, she attained that age shortly after the passage of the decree. By sections 7 and 8 of Article 79 of the Code any female over the age of eighteen years is authorized to execute a release to any trustee for the proceeds of the sale of real or leasehold property, and by section 10 it is provided that: "The release or receipt of a woman over the age of eighteen years * * * for any money paid, property delivered or obligation satisfied shall be a good and valid discharge * * * in the same manner and to the same extent as releases or receipts of the same character are now by law good and valid when executed and delivered by persons of the full age of twenty-one years." The female petitioner referred to is one of the five children of a deceased legatee, who was bequeathed one-tenth of the residuary estate, and she is entitled, after allowance for her mother's interest as widow, to less than one-fiftieth of the funds to be distributed. As she is perfectly competent under the law of this State to execute and deliver to the trustee, in this jurisdiction, a valid release for her small proportion of the estate, and as all the other beneficiaries have joined in the petition, we see no occasion, in view of the other considerations we have discussed, to order a continuance of the trust until she arrives at the full legal age of twenty-one years.

The decree will be affirmed as to the assumption of jurisdiction over the trust and the appointment and qualification of the trustee, but in other respects it will be reversed and the cause remanded for further proceedings in conformity with this opinion.

> *Decree affirmed in part and reversed in part, and cause remanded, the costs to be paid out of the trust estate.*