## MARGARET E. MANDERS ET AL. *vs.* MERCANTILE TRUST AND DEPOSIT COMPANY.

*Trusts—Alienability by Cestui—Termination at Request of Cestuis.*

A gift of a fund in trust to hold the same and pay out of the net income arising therefrom a named sum to testator's widow for life, with a provision that in case of a deficiency in the income it should be made up from the corpus of the trust fund, did not restrict the widow's right to alienate the income or render it unattachable by her creditors.   pp. 453, 454

A court of equity may decree the termination of a trust when all the objects and purposes of the trust which are inconsistent with the full beneficial ownership and control of the *cestui* are fulfilled, all the parties who are or may be beneficially interested in the trust property are in existence and *sui juris,* and they all consent and agree to the ending of the trust.
p. 457

A trust for testator's widow for life, free from any restriction upon her right of alienation thereof or upon its liability to attachment by her creditors, *held* to be terminable at the request of the widow and such others as were beneficially interested in the trust property, they being all *sui juris.*
pp. 457, 458

*Decided February 26th, 1925.*

Appeal from the Circuit Court No. 2 of Baltimore City (DUKE BOND, J.).

Bill by Margaret E. Manders and others against the Mercantile Trust & Deposit Company, trustee. From a decree denying the relief prayed, plaintiffs appeal. Reversed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Watson E. Sherwood* and *Edward Duffy,* for the appellants.

*Charles McH. Howard,* for the appellee.

WALSH, J., delivered the opinion of the Court.

The bill of complaint in this case asked the court to terminate the trust created by item 4 of the last will and testament of Samuel M. Robinson, deceased, and to direct the trustee to turn over the trust fund to the complainants, who were respectively the widow, mother, and two sisters of the testator.

The following disposition of his estate was made by the testator in his will: By item 2 he gave to his wife, Margaret E. Robinson (now Margaret E. Manders), $5,000, and to his mother, Susan Rebecca Robinson, and his two sisters, Pearl and Thelma Robinson, each the sum of $10,000. Item 3 was a specific bequest of securities sufficient to yield $420 a year over and above expenses, as a spendthrift trust, for his brother, Royston Robinson, for life, and after his death the principal was to become a part of the residue of the testator's estate, and was to pass under the residuary clause of his will. Item 4 bequeathed the sum of $20,000 to the Mercantile Trust and Deposit Company of Baltimore, "in trust to hold the same and pay out of the net income arising therefrom to my wife, Margaret E. Robinson, the sum of nine hundred dollars, in monthly instalments, accounting from the date of my death, for and during the term of her natural life. It is my intention that my said wife shall be paid out of said fund the said sum of nine hundred dollars per annum, and if the income arising therefrom is not sufficient to yield that amount for payment to her, after deducting the expenses of administering the trust, then I authorize and direct the trustee to pay to her any deficiency out of the corpus of the trust fund, and to continue to so do until the exhaustion of the principal of the fund." It was then provided that any surplus income be added to the

principal and that, in the event his wife predeceased him, the $20,000 be given to his mother and two sisters in equal shares, or to the survivors or survivor of them.   There was no remainder over.

With the exception of the testator's "packing business," item 5 bequeathed and devised "all of the rest, residue and remainder" of his estate to his wife, mother and two sisters, the wife to receive twenty-five fifty-fifths and the mother and two sisters each to receive ten fifty-fifths.

Items 6 and 7 provide for any children the testator might have, but these items are of no concern in this case because he had no children.

Item 8 disposed of the "packing business" above mentioned, and provided that the proceeds of the sale of the business, and the profits made pending the sale, should be divided, one-half to the testator's brother Herbert, and the other half to his wife, mother, and two sisters in the proportions fixed by item 5.

The estate proved insufficient to pay in full all the bequests made in the will, and an agreement was accordingly entered into on July 31st, 1919, by all the beneficiaries under the will, whereby the testator's widow, in consideration of her not renouncing the will and taking her legal share of the estate, was given a preference, both as to the $5,000 bequeathed to her in item 2, and the $20,000 trust fund created for her benefit in item 4.   The distribution made under this agreement resulted in the payment in full of the last mentioned two items for the widow, and the payment in full of a sum sufficient to provide the annuity bequeathed in trust for the testator's brother Royston in item 3.   These payments left a balance of only $6,627.37 in the estate, and that sum was equally divided between the mother and two sisters, so that they each received but $2,209.13 on account of the $10,000 legacies bequeathed to them in item 2.   The agreement further provided that the share of the widow, mother and two sisters in the proceeds of the sale of the packing business (which business had been purchased by the testator's brother Herbert), should be applied to the

payment of the pecuniary legacies, and this was apparently
done when the estate was distributed. On November 24th,
1922, the widow, who had remarried, the mother, and the
two sisters entered into an agreement with each other to
terminate the $20,000 trust created by item 4, and to divide
the corpus of the fund by giving $12,000 to the widow and
$8,000 to the mother and two sisters. The agreement also
contained the following clause: "And each of said parties
agree to render all and whatever assistance may be neces-
sary or proper to accomplish the termination of said trust
fund."

To carry out the terms of this agreement a bill was filed
asking the court to pass a decree terminating the trust and
directing the trustee, which was made defendant, to dis-
tribute the fund in the proportions agreed upon. The trus-
tee answered, admitting the material facts alleged in the
bill, and also conceding that, upon the termination of the
trust created in item 4, the corpus of the trust fund would
be applicable to the payment of any unpaid balance of the
legacies bequeathed to the mother and two sisters in item 2
of the will, but the trustee denied the right of the com-
plainants to end the trust by agreement, on the ground that
the termination of the trust during the life of the widow
would be contrary to the intention of the testator. In para-
graph nine of the bill, which was added by way of amend-
ment and not answered by the defendant trustee, it is alleged
that the testator's mother was wholly dependent upon him
at the time of his death, and that since then the duty of sup-
porting her has devolved upon his two sisters, both of whom
are compelled to work to earn ther own livelihood, and who
find the task of caring for their mother increasingly diffi-
cult because of her advanced age and physical infirmities.
It is further alleged that the two sisters do not want any
part of the trust fund for their own use, but desire it solely
for the purpose of applying it to the proper care and main-
tenance of their mother. The amendment then asks for
another form of relief in the event the court should deter-
mine that the trust is not terminable at this time, but in

the view which we take of the case it will be unnecessary to refer further to this alternative relief.

The case was submitted below on the bill, answer, and exhibits, and the court having denied the relief prayed, and dismissed the bill of complaint, the complainants appealed.

The chief question presented by the appeal is whether or not the trust fund created in item 4 was, or can be, terminated by the agreement of November 24th, 1922.

It is conceded that the $10,000 legacies provided in item 2 vested in the mother and two sisters at the death of the testator, and, as we have seen above, that the principal of the $20,000 trust would, upon the death of the widow, be applicable to any unpaid balance of said legacies. It is also conceded that any part of the remainder of the $20,000 trust fund which was not needed to pay the balance of the $10,000 legacies would pass under the residuary clause of the will, and that the widow, mother, and two sisters took vested interests in whatever part of the estate passed under the residuary clause of the will.

It is thus apparent that all the parties who are beneficially interested in any way in either the income or principal of the trust fund provided for in item 4 are in court, and it is accordingly not necessary for the purposes of this case to inquire how the principal of the trust fund created in item 3 for Royston Robinson should be applied after Royston's death. Whether that would be applied to the $10,000 legacies, or would pass as a specific bequest to the widow, mother, and sisters, is immaterial here, because it is perfectly obvious that the remainder of the $20,000 trust fund would be applied first to the legacies, and the balance, if any, would pass under the residuary clause of the will, and all the interests in the legacies, and in whatever part of the estate passes under the residuary clause, are vested in the appellants.

The appellee contends that it was the manifest intention of the testator to provide by item 4 a fixed minimum annual income for his widow for life, and that the termination of the trust created to supply this income would clearly defeat

the testator's intention. The appellants argue that the income from the trust fund could be sold by the widow, or attached by her creditors, or would go to her trustee in insolvency or bankruptcy, and that, as the happening of any of these contingencies would deprive the widow of the income, and the testator did not provide against them in his will, there is no reason why the trust should not be terminated. The precise question presented in this appeal does not seem to have been heretofore passd upon by this Court, but there are a number of decisions bearing upon it in one way or another, and an examination of some of these will prove helpful in arriving at a proper conclusion in this case.

In *Smith v. Towers,* 69 Md. 77, our predecessors laid down the rule that "the founder of a trust may provide in direct terms that his property shall go to his beneficiary to the exclusion of his alienees, and to the exclusion of his creditors." The estates thus recognized for the first time in Maryland are commonly known as "spendthrift trusts," and, where created by appropriate words, they have been uniformly upheld by this Court ever since the decision above quoted from. See *Maryland Grange Agency v. Lee,* 72 Md. 161; *Reid v. Safe Deposit & Trust Co.,* 86 Md. 464; *Cherbonnier v. Bussey,* 92 Md. 421; *Jackson Square Association v. Bartlett,* 95 Md. 661; *Safe Deposit & Trust Co. v. Independent Brewing Assoc.,* 127 Md. 463; *Plitt v. Yakel,* 129 Md. 464. It is thus evident that the testator in this case could have rendered the income given his widow inalienable by her and unattachable by her creditors. It is equally obvious that he did not do so. In *Baker v. Keiser,* 75 Md. 332, it was held that, under a bequest of certain property "in trust for the benefit of said Levina during her life, receiving her annual interest and income therefrom, the said share to be securely invested, as soon as declared, and after her death to be equally divided between her childrn," no restraint was placed on alienation by the life tenant, and the same was accordingly held subject to attachment by her creditors. And in *Houghton v. Tiffany,* 116 Md. 655, Chief Judge Boyd, after reviewing the prior cases in this State

dealing with the subject, said that, where property was given "in trust, that he, the said trustee, shall manage that portion of said hereby granted property and collect and receive the rents, issues and income thereof, and shall, in his discretion, either pay such rents, issues, and income to the said Harry Tiffany, or apply the same for his use during his life," there was no restriction of the right of the life tenant to alienate his estate. See also *Warner v. Rice,* 66 Md. 436, and *Wenzel v. Powder,* 100 Md. 36. Under these decisions it is certainly clear that the language used by the testator in this case, in creating the trust for his wife in item 4, imposed no restriction upon her right to alienate the income therein provided for her, and we therefore find that she had the right to alienate it and that it was subject to her debts. This is made even more clear by a comparison of item 3 with item 4 of the testator's will. The former clause provided a trust fund for his brother Royston, and the testator directed that the income "be paid into his own hands, for his sole and separate use, and it is not to be liable for any of his debts, or to be charged or anticipated by him in any way." This language clearly created a "spendthrift trust." Its use indicated that the testator was familiar with such trusts, and the failure to use words of similar import in creating the trust for his wife showed, if it showed anything, that the testator did not intend to limit or restrict the right of his wife to alienate the income bequeathed to her.

In *Thompson v. Ballard,* 70 Md. 10, a woman and her husband conveyed certain property to a trustee for the sole and separate use of the wife during her life, and after her death "in trust that the said trustee shall appropriate and apply the net rents, issues, incomes and profits derived from the said trust property and premises, to the use, benefit, support and maintenance of said Robert F. Thompson, for and during and until the end of his natural life," the remainder to go to any children of the wife upon their becoming twenty-one years of age. The wife died leaving one son. After her death the husband became insolvent, his life estate in the trust fund was sold in the insolvency proceedings to a

person who later conveyed it back to him and, after he had again acquired it, the son, who was then twenty-one, joined with him in a petition asking that the trust be terminated. The Court held that: "The object of the trust was strictly and entirely personal. Robert Thompson alone was in contemplation, and it was incapable of being performed in reference to any other person. When a third person became possessed of his rights of property, the trust was entirely defeated." It was further held that the reconveyance of the life estate to the husband did not revive the trust, and that the joint application of the husband and son to terminate the trust should be granted. In *Brillhart v. Mish,* 99 Md. 447, a person conveyed a life estate in property to a trustee, with directions to the trustee to manage the same and pay over the net income to the grantor, who, by reason of bodily infirmities, had become incapable of managing his affairs. The deed provided that the trust should be irrevocable. Subsequently the remaindermen filed a bill to have the property sold in lieu of partition, and the grantor consented to the sale. It was held, on exceptions filed by the trustee and purchaser to the ratification of the sale, that the equitable interest of the grantor under the trust deed was subject to his debts and alienable by him, and that his consent to the sale operated to end the trust. To the same effect see *Wenzel v. Powder, supra.* The foregoing cases do not cover the precise point involved in the case before us, but they do establish some of the principles contended for by the appellants, and there are many decisions outside of this State which fully support their position.

In *Brooks v. Davis,* 82 N. J. Eq. 118, a testatrix left her estate to her executor in trust, and directed that four dollars per week be paid to her grandson, said sum "to be paid to him by my executor weekly during his natural life from the income from my properties." At the death of the grandson the entire estate was to go to certain designated devisees. The complainant purchased the interest of the grandson and also the interest of the remaindermen and, being thus the only person beneficially interested in the estate,

he asked that the trust be ended. The court held that the interest of the grandson was alienable, and decreed that the trust be terminated.

In *Whall v. Converse,* 146 Mass. 345, a testator left $20,-000 in trust for his wife for life, or until she married again, with remainder over, on certain trusts, to his son and daughter. Subsequent to his death both the son and daughter died, and the widow acquired, partly by inheritance and partly by assignment from a legatee under the son's will, the entire interest in the remainders. The court, speaking through Justice Holmes, held that, as the widow had the equitable title to the whole fund, she had the right to terminate the trust.

In *Sears v. Choate,* 146 Mass. 395, a testator gave the residue of his estate to trustees, in trust to hold and manage the same, and, after providing for the support and education of his son during minority, he further provided that "when he shall be twenty-one years old I direct that four thousand dollars shall be paid to him annually, when he shall be twenty-six years old five thousand dollars a year, and ten thousand dollars per year when he shall be thirty years old." There was no remainder over, and upon becoming thirty years of age the son filed a bill asking that the trust be terminated. In a previous case involving the same will (*Sears v. Hardy,* 120 Mass. 524), the trustees had been directed to turn over to the son all of the estate in their hands which was not required for the payment of the annuity provided for by the will, and in the course of its opinion in that case the court said: "It is conceded by all parties that, in order to carry out the plain intention of the testator to secure to the son an honorable support, during his life, not exposed to the risks of his improvidence or misfortune, the trustees should retain in their hands enough of the estate to produce beyond question the annuity provided for in the will." In commenting on this in *Sears v. Cohate, supra,* the court said: "It is quite probable that the testator had this idea or intention in his mind; but if he had, he failed to frame his will in such a way as to carry

out his intention.   This court has held that the founder
of a trust may give an equitable life tenant a qualified estate
in income which he cannot alienate and which his creditors
cannot reach.   *Broadway National Bank v. Adams,* 133
Mass. 170.   But in order to give such a qualified estate,
instead of an absolute one, the language of the founder must
be clear and unequivocal to that effect."   After holding that
no such qualified estate was given by the will in question,
the court continued: "There is no doubt of the power and
duty of the court to decree the termination of a trust, where
all its objects and purposes have been accomplished, where
the interests under it have all vested, and where all parties
beneficially interested desire its termination."   The trust was
accordingly terminated, and the trustees directed to pay over
the entire estate to the son.

To the same effect see *Langley v. Conlon,* 212 Mass. 135;
*Tilton v. Davidson,* 98 Me. 55; *Angell v. Angell,* 28 R. I.
592; *Simmons v. Northwestern Trust Co.,* 136 Minn. 357;
*Peugnet v. Berthold,* 183 Mo. 61; *Eakle v. Ingram,* 142
Cal. 15; *Culbertson's Appeal,* 76 Pa. St. 145, and cases col-
lected in note in 2 *A. L. R.* 579.

The rule established by the foregoing cases, and sup-
ported by reason and the weight of authority, is that a court
of equity may decree the termination of a trust when all
the objects and purposes of the trust which are inconsistent
with the full beneficial ownership and control of the *cestui*
are fulfilled, all the parties who are or may be beneficially
interested in the trust property are in existence and *sui
juris,* and they all consent and agree to the ending of the
trust.   2 *Perry on Trusts,* par. 920; 39 *Cyc.* 99, and cases
cited *supra.*   Applying this rule to the present case, we find
that there is no provision in the will creating the trust which
interferes in any way with the full beneficial ownership
and control by the *cestui que trust* of her interest.   She has
the absolute right to alienate that interest, it could be
attached by her creditors, and would go to her trustee in
insolvency or bankruptcy.   It accordingly follows that the
objects and purposes of the trust, as that trust was ex-

pressed by the testator, are not inconsistent with the full beneficial ownership and control of the *cestui*. Had the testator wished to limit the ownership and control of his wife over the trust estate provided for her he could have done so, in the same way in which he limited the ownership and control of his brother Royston over the trust estate provided for him, or in some other way clearly indicating that the *cestui* was not to have complete control, but this he failed to do. We also find that all the parties who are or may be beneficially interested in the trust property, both principal and income, are in court, they are all *sui juris,* and they all not only agree and consent, but ask, that the trust be terminated.

In our opinion, their request should be granted, and the decree of the lower court will accordingly be reversed and the case remanded.

The case of *Gunn v. Brown,* 63 Md. 96, cited on the brief of the appellee, is, we think, readily distinguishable from this one. The clause of the testator's will creating the trust involved in that case is not set out in the report, but the same will was before the Court in the case of *Fairfax v. Brown,* 60 Md. 50, and the clause in question will be found on pages 51 and 52 of the latter report. Undoubtedly, in that clause, the testator prohibited the alienation of the interest he was giving his daughters, who were the beneficiaries, and he also rendered that interest inaccessible to their husbands as well as to their creditors. It is true that the case was decided before "spendthrift trusts" were established in Maryland (see *Smith v. Towers, supra*), but the Court in the *Gunn* case certainly recognized the validity of the restrictions contained in the will, and really refused to terminate the trust because of them, saying, on page 98: "The petitioner in this case seems to think that she is not benefited by the restrictions in the will, * * * Such restrictions may not, in fact, operate to her advantage; but the testator who had, we think, the undoubted power, imposed them, and we have no authority to remove them."

In the present case there are, as we have seen, no such restrictions as to alienation or liability for debts.

> *Decree of the lower court reversed, and cause re-
> manded for further proceedings in accord-
> ance with this opinion, the costs to be paid
> from the trust fund.*

---

BOND, C. J., filed the following separate opinion:

It seems to me that the same result is justifiable upon the ground that the circumstances now existing were contrary to those contemplated by the testator and for which he intended the trust to provide; but I have not been able to agree in the view that the court of equity should act to terminate the testator's trust upon agreement of the beneficiaries irrespective of the circumstances and even when they are just what the testator did contemplate and provide for. *Thorne v. Thorne,* 125 Md. 119. I have, therefore, concurred in the result, but disagreed with the broad rule adopted in the majority opinion.