## CAROLINE SEATON JOHNSON *v.* CATHERINE GUNTHER STRINGER ET AL.

[No. 72, October Term, 1929.]

*Decided January 15th, 1930.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William M. Maloy* and *Henry Vogt*, with whom were *George C. Shinn* and *Maloy, Brady & Yost* on the brief, for the appellant.

*Wirt A. Duvall, Jr.*, for Catherine Gunther Stringer and Wilson B. Stringer, appellees.

*John A. Farley* and *Coady & Farley*, submitting on brief, for Catherine Gunther and others, appellees.

*D. K. Este Fisher*, for Safe Deposit & Tr. Co., Trustee, appellee.

DIGGES, J., delivered the opinion of the Court.

The question presented for decision on this appeal is whether or not the income from certain property held by the Safe Deposit & Trust Company of Baltimore as trustee under the will of George Gunther, deceased, now being paid under the provisions of said will to Catherine G. Stringer, the daughter of the testator, can be subjected, while in the hands of such trustee, by the creditors of Catherine G. Stringer, to the payment of her debts. The bill filed by the appellant in Circuit Court No. 2 of Baltimore City sought to accomplish this. The defendants under the bill are Mrs. Stringer and her husband; her sister, Mrs. Cooney, and her husband; Mrs. Catherine Gunther, the mother of Mrs. Stringer; the Safe Deposit & Trust Company, a body corporate, in its individual capacity; the same corporation, as trustee under the will

of George Gunther; and the same corporation, as trustee under a declaration of trust made by Mrs. Catherine Gunther, the mother. Each of these defendants filed demurrers to the bill of complaint, which were sustained by the chancellor, with leave to amend within a specified time. The complainant refused to amend; whereupon a decree was entered dismissing the bill; and this appeal followed.

George Gunther, the father of Mrs. Stringer, died in September, 1912, leaving a last will and testament by which he disposed of a large estate. After making specific bequests in comparatively small sums, the rest and residue of his estate was devised and bequeathed to the Safe Deposit & Trust Company of Baltimore, as trustee, to manage, invest and collect the income therefrom, and after paying from said income to his widow, Catherine Gunther, $12,000 annually, and to each of his two daughters, Mrs. Stringer and Mrs. Cooney, the sum of $2,600 annually, the trustee was directed to accumulate and invest the surplus income arising from the trust estate until the death of the widow, at which time the trustee was directed to divide the property held by it into four equal portions and to transfer and deliver to each of the two sons of the testator one of these equal portions, free and discharged from any trust, while at such time the other two equal portions were directed to be still held in trust, one of said portions for the benefit of each of his two daughters, and to pay to each of them the total of the income from their respective portions, so long as the daughter entitled to that income should live, and, upon the death of each of his daughters, the corpus of the trust estate from which the income had been paid to the daughter so dying, it was provided, should be equally divided between the children or descendants of said daughter *per stirpes,* free and clear of any trust. It was specifically provided by the testator that the sum of $2,600, annually to be paid to Mrs. Stringer until the death of her mother, should be paid by the trustee "into her hands and not into the hands of another, whether claimed by her authority or otherwise"; and it was likewise specifically set out in the will that the income from the one quarter of the estate, to

which Mrs. Stringer was entitled after the death of her mother, should be paid into her hands and not into the hands of another, whether claimed by her authority or otherwise, for and during the term of her natural life.

The will was probated shortly after the death of the testator, and letters of administration granted to the two sons and the widow, they being named in the will as executors. On December 16th, 1912, Catherine Gunther, the widow, renounced the will and elected to take the portion of her deceased husband's estate to which the law entitled her. It appears that the two daughters were dissatisfied with the income provided for them under their father's will, and were considering contesting the will or filing proceedings for the purpose of having their remainder interest declared accelerated by their mother's renunciation. On March 20th, 1913, a declaration of trust was made by the mother, Catherine Gunther, to which the two daughters and the Safe Deposit & Trust Company were parties, in the preamble to which it was declared that, whereas George Gunther, late of Baltimore City, deceased, departed this life on the 5th of September, 1912, leaving a last will and testament dated May 23rd, 1911, which has been duly admitted to probate by the Orphans' Court of Baltimore City, whereby there was devised and bequeathed a portion of the estate of said deceased to the Safe Deposit & Trust Company of Baltimore in trust to pay unto the said Catherine Harvey (now Catherine Stringer) the sum of $2,600 per annum, in addition to other provisions made for her therein, and that on or about the 16th day of December, 1912, Catherine Gunther, the widow of said deceased, renounced all claim to bequests and devises made to her in said last will and testament, and elected to take in lieu thereof her dower and legal share of the estate of her said husband, and that the said Catherine Harvey has expressed her dissatisfaction with the provision made for her in said will and has indicated her intention to contest said will; and whereas for the purpose of preventing any proceeding to contest the validity of said last

will and testament or any of the dispositions made therein, and for the purpose of preventing any proceedings on the part of the daughters to enable them, under the doctrine of acceleration of remainders, to obtain for themselves the present enjoyment of a larger income from said estate, and for the purpose of having said daughters accept the last will and testament and all the provisions therein, the declaration of trust was executed. It is recited that in consideration of the premises and the covenants and agreements therein made by the respective parties thereto, the assumption of the trust by the Safe Deposit & Trust Company of Baltimore, and one dollar, the widow Catherine Gunther granted and assigned unto the Safe Deposit & Trust Company, subject to certain rights reserved to her, all her right, title and interest in and to the personal estate of her husband, George Gunther, in trust to hold the same, collect the income issuing thereout, and pay from the net income unto her daughter Catherine the sum of $9,400 per annum in equal monthly instalments, "into her hands and not into the hands of another, whether claimed by her authority or otherwise," until the death of her (the mother), or until such time as there should be instituted by or on behalf of her said daughter Catherine any suit or proceeding to dispute or contest the validity of the will of her husband (George Gunther), or until such time as there should be instituted by or on behalf of her said daughter Catherine proceedings to accelerate the remainder provided for the said daughter by the will of her father, and so obtain and enjoy a larger income from the estate of her father, or until the passage of any final decree or order of a court of equity accelerating the said remainder in favor of the said daughter Catherine, whichever of said events may first occur.

This declaration of trust also provided that should the daughter Catherine predecease her mother, leaving descendants surviving her, and at the time of her death being still entitled to receive said annual sum of $9,400, in that event the said sum should be continued for her descendants dur-

ing the life of the said Catherine Gunther until any one of
the contingencies set forth above for the discontinuance of
the payment should happen. It further provided that, if
the entire income from the trust estate thereby created should
be insufficient to pay the sum of $9,400 per annum to each
of her daughters or their descendants, the deficiency should
be made out of the principal of the said trust estate. A like
provision was made for the daughter Mrs. Cooney. The
two daughters each covenanted for themselves and their heirs
that they would accept and abide by the last will and testa-
ment of George Gunther and all provisions thereof; that they
would not contest its validity or the validity of any of the
dispositions made therein; that they would not take any
proceedings to have determined the question of the acceler-
ation of the remainders created by that will that had arisen
by reason of the renunciation of said Catherine Gunther.

At the time of the distribution by the executors of George
Gunther, the portion of the personal estate to which the
widow Catherine Gunther was entitled after her renunciation
was turned over and accepted by the trust company under
the provisions of the declaration of trust just recited. After
the receipt by the trustee of the personal estate turned over
to it under the declaration of trust made by Catherine Gun-
ther, payment was made by the trustee under the provisions
of that trust to Mrs. Stringer; and no change took place in
the situation until some time in 1922, when the two sons of
George Gunther instituted proceedings to have the remain-
ders created by the will of their father declared to have been
accelerated by the renunciation of the widow. On August
21st, 1922, the two daughters and the mother entered into an
agreement, in which, after reciting the execution of the decla-
ration of trust of March, 1913, it was agreed that it was not
the intention of the parties to said declaration of trust that,
should the acceleration of the remainders be declared in pro-
ceedings taken by parties other than the daughters, the in-
come arising out of the mother's declaration of trust should
be paid in addition to the income from the full portion of

the father's estate to which each daughter would be entitled by reason of such acceleration. It was, therefore, by that instrument agreed, for a valuable consideration, that upon the passage of a final decree by a competent court determining that the remainders under George Gunther's will had been accelerated by the renunciation of the widow, the payments to the daughters under the declaration of trust of 1913 should cease; and that, out of the income added to their portion under their father's will, the mother should be reimbursed to the amount theretofore paid the daughters under the mother's declaration of trust, provided the reimbursement to the mother should not exceed the amount of their accumulated income under the provisions of the father's will. The daughters further agreed to give such directions or to do such other things as might be necessary to insure to their mother such reimbursement and repayment out of their shares of income in the hands of the trustee, and by the agreement did direct that the trustee under their father's will make such payment out of said income as soon as the decree declaring acceleration had been passed.

On February 2nd, 1923, a final decree by this court was passed declaring that the renunciation of the widow had accelerated the remainders under the will of George Gunther. *Safe Deposit & Tr. Co. v. Gunther,* 142 Md. 644. The effect of this decree was to declare that Catherine Stringer was entitled to the total net income from one-fourth of her father's estate, after deducting from the whole of his estate the widow's proportion, and that she was entitled to such total income from the date of the renunciation by the widow, which renunciation, in so far as affecting the payment of the income to the remaindermen under the provisions of George Gunther's will, was equivalent to the widow's death.

In accordance with the provisions of the decree of Circuit Court No. 2 of Baltimore City, affirmed by this court in *Safe Deposit & Tr. Co. v. Gunther, supra,* the trustee stated an account of its administration of the trust under George Gunther's will, showing separately the corpus of said trust fund

and the accumulated income therefrom, from the time the fund came into its hands to the date on which the decree of the Circuit Court No. 2 was affirmed. This account also showed the portion of the accumulated income to which Mrs. Stringer was entitled, and after deducting the amount already paid her of $2,600 a year since the beginning of the trust, and the further sum which was shown to have been paid to her during that time under the provisions of her mother's declaration of trust, the balance of said accumulated income was paid over to Mrs. Stringer, and a sum sufficient to reimburse the mother was paid to her. Since such reimbursement to the mother, the total income arising from that portion of George Gunther's estate to the income from which Mrs. Stringer is entitled, has been annually paid to her; and from the same time, no further payments have been made by the trustee to Mrs. Stringer under the mother's declaration of trust. The above facts are all that are necessary for the proper consideration and decision of the questions involved.

The question of acceleration due to the widow's renunciation has already been determined by this court. Neither can there be any doubt that a spendthrift trust was created by the will of George Gunther in respect to the income which his daughter Mrs. Stringer was entitled to receive thereunder. The language of the will, which applies to all of the income which Mrs. Stringer receives or is entitled to receive by force and virtue of its provisions, is that the trustee is directed to pay said income "into her hands and not into the hands of another, whether claimed by her authority or otherwise." This language is the identical language held by this court to have created a spendthrift trust in the case of *Smith v. Towers,* 69 Md. 77. This case was the first expression of this court on the question of a spendthrift trust, and is a leading case on that subject. This decision was in 1888, since which time it has been settled that a spendthrift trust may be validly created in Maryland if appropriate language be used; and in the numerous subsequent cases in this court, considering the subject of a spendthrift trust, the questions have not been as to the power of the testator to create such a trust, but as to

his intention to do so, and the sufficiency of the language used to give effect to such intention. It is clear that George Gunther by his will intended that the income therein provided to be paid by the trustee to his daughter Catherine should not be subjected to the payment of her debts; and we are not left in doubt as to the sufficiency of the language used to accomplish this purpose, because it is actually the language passed upon and declared to be sufficient in *Smith v. Towers, supra.* Under George Gunther's will the $2,600 income to be paid to his daughter Catherine until the death of his wife, as also all of the income to be paid to the said daughter after the death of his wife, is protected from her creditors by the use of the same language which we have formerly decided does accomplish that purpose.

But it is contended that the acceleration of the remainder by the renunciation of Catherine Gunther, the widow, removes from the protection of the spendthrift provision the surplus of income over and above $2,600 to which Catherine Stringer is entitled from the time of the widow's renunciation until her physical death. We think it is clear that the testator intended that the whole of the income derived by Catherine Stringer from the estate of the testator, or any portion thereof, should be subject to the spendthrift trust provision. If the widow had not renounced, there would be no portion of the income payable to Mrs. Stringer that would not be specifically covered by such spendthrift provision. What effect did the renunciation of the widow have? It is undoubtedly true that after her renunciation the full intent of the testator as expressed in his will could not be carried out, because the amount which each one of the beneficiaries was to receive under the terms of the will was altered by the renunciation of the widow. What the law gave her after the renunciation was an increase over and above what the testator indicated was his intention, and resulted in a corresponding decrease to the remaining beneficiaries. What the widow took after her renunciation was not under the will, but in opposition to the will; and its effect upon the remain-

ing beneficiaries was twofold: It damaged them to the extent that their respective shares were diminished by the enlargement of the widow's share, and it benefited them by accelerating or pushing forward the time at which they would receive the full benefits of their remainder interest. In other words, so far as hastening the full enjoyment of their remainders, the widow's renunciation was equivalent to her death. The renunciation of the widow was something that the testator could not prevent; but he is presumed to have known that she could renounce, and charged with knowledge of the legal effect of such renunciation. Every husband, therefore, when he makes a will, does so charged with the knowledge that its provisions may be affected by the renunciation of his widow. But a renunciation by the widow makes only such changes in the will and in the intention of the testator as the law compels. In *Disston's Estate,* 257 Pa. 537, a somewhat similar case, quoted with approval in *Safe Deposit & Tr. Co. v. Gunther, supra,* that court, speaking through now Chief Judge von Moschzicker, said: "In a case like the one before us, the effort must be to find and carry out the testator's chief intent with a minimum disturbance of the general plan of the will. After his wife, the testator's children were the natural and primary objects of his bounty, not their issue, still less nieces and nephews or their issues, and the alternative provisions for others, after the testator's children, were undoubtedly intended as substitutionary, in case the latter died during the life of their mother, should she take under the will; but, as said by Mr. Justice Mitchell, in *Vance's Estate,* 141 Pa. 209, a testator is presumed to know that a widow's statutory rights are paramount, and that she may take against his will; to which we now add that a testator is presumed to know also the general rule that the election of a widow to take under the intestate laws is equivalent to her death, and that, unless his will plainly indicates a contrary intent, remainders are accelerated accordingly."

Having found that it was clearly the intention of George

Gunther that all of the income directed to be paid by the trustee to his daughter Catherine should be protected from her creditors, in the event that his widow should not renounce, it cannot logically be claimed that, if she did renounce, it was his intention to place any part of the income to be paid to his daughter Catherine within reach of the creditors. All of the income paid by the trustee to Mrs. Stringer goes to her, not by operation of law, by reason of the widow's renunciation, but under the terms of George Gunther's will. The power and authority for her to take is not in opposition to the will, but by virtue of its terms. The intent of the testator being clear, and the fact that Mrs. Stringer takes only under the will being equally certain, if we then apply the rule of the Pennsylvania court, adopted by this court, namely, to effectuate the testator's chief intent with a minimum disturbance of the general plan of the will, it becomes the duty of the court to approximate as closely as possible to the scheme of the testator, and only to permit such changes in the will as inevitably follow the widow's renunciation. The specific provisions of the will cannot be effectuated in their entirety, because the testator's widow, in the exercise of her paramount legal right, has claimed and received the property which at her election vests in her upon her husband's death, without regard to his purpose and intent as expressed in the will. We must now interpret the will of George Gunther, not in the light in which he viewed the situation, but under the condition brought about by the widow's renunciation, so as to do as little violence as possible to his clearly expressed purpose.

In *Safe Deposit & Tr. Co. v. Gunther, supra,* this court held that there was nothing in the will of George Gunther, either express or implied, which manifested an intention upon the part of the testator to postpone the vesting in possession of remainders to his two sons and two daughters until the expiration of the life of Catherine Gunther, his widow, but, on the contrary, that the whole scheme of the will indicated that the testator intended the ultimate division among

.his four children in accordance with item 9 of the will, immediately upon the expiration of his widow's annuity; that the renunciation by the widow of the provisions made for her by the will terminated her annuity of $12,000 for life bequeathed under item 9 of the will as fully and effectually as her death would have terminated it, and accelerated the right to possession of the absolute vested remainders and the equitable vested remainders for life in their respective equal one-fourth parts of the residuum of the estate devised to them upon the death of their mother. If Catherine Gunther had died on December 16th, 1912, instead of renouncing the will on that date, no part of the income payable to Mrs. Stringer out of her father's estate would have been liable for her debts; and, it having been decided that her renunciation, so far as affecting the other provisions of George Gunther's will, was equivalent to her death, it inevitably follows that the income received by Mrs. Stringer subsequent to the renunciation is also protected from her creditors.

The appellant further contends that the accelerated equitable life estate which Mrs. Stringer now enjoys was the result of a consideration passing from her to her mother at the time her mother executed the declaration of trust of 1913; that this consideration consisted of a forbearance to caveat the will of George Gunther or to take any proceedings to accelerate the vested remainders, and that, having given value for the income which she now enjoys, what she receives is alienable and therefore may be subjected to the claims of her creditors. We can see no force in this argument. If Mrs. Stringer purchased anything in consideration of her forbearance, it was the annuity of $9,400 provided for her by the declaration of trust of her mother; and although this $9,400 was expressed to be a spendthrift trust, it may have been contended with some force that, having been so purchased, it was alienable, and therefore subject to the payment of her debts. But whether this be true or not, Mrs. Stringer certainly did not purchase anything which she is now receiving under the terms of her father's will, because she receives it

under the express language and intention of the testator, and subject to the protection against the claims of her creditors. She receives today exactly what she would have received if the declaration of trust made by her mother had never been in existence. Finally, we are of the opinion that the provision made for Mrs. Stringer by the declaration of trust of her mother, by its terms, was only to last until the happening of any one of the contingencies therein set forth, one of which was the receiving of the full income from the one-fourth portion of her father's estate by reason of a decree declaring that an acceleration had taken place. This contingency happened on February 2nd, 1923, and the provision for the payment of the $9,400 under the mother's declaration of trust ceased at that time, even without any subsequent agreement on the part of the parties that it should cease. However, by the agreement of August, 1922, the contingency which did happen was anticipated, and the beneficiaries, together with the declarant under the mother's declaration of trust, set forth their understanding and intention as expressed in that instrument, and agreed that, if the contingency did happen, payments were to cease, and all payments theretofore made under it should be repaid to the mother.

All of these occurrences were matters of record and took place four years before the indebtedness now sought to be enforced was incurred. The bill of particulars filed shows that the articles therein contained were purchased between March and June, 1927; so that the appellant had an opportunity to acquaint herself with the true condition existing before and at the time the credit was extended.

We have expressed no opinion as to the question of multifariousness, this being immaterial because of our views in respect to the merits of the case. We find no error in the decree of the chancellor; and, in view of the logical reasoning set forth in his opinion, we might very well have been content to have rested our affirmance of the decree upon the reasons therein stated.

*Decree affirmed, with costs to the appellees.*