KIRKLAND, Committee *v.* MERCANTILE-SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, Trustee

[No. 4, September Term, 1958.]

18

*Decided October 23, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Thomas F. Cadwalader* for the appellant.

*Frank T. Gray,* with whom were *McKenney W. Egerton* and *Piper & Marbury* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The appellant, as committee of her invalid and incompetent sister, seeks to have this Court order the termination of a trust, under which the incompetent is a beneficiary, in the alternative: either by decreeing that said incompetent is presently entitled to one-sixth of the trust fund as the owner of that portion as vested remainderman and as life-tenant; or that the incompetent is presently entitled to one-half of the fund on the ground that the objects of the trust have been fully accomplished, and that no one is interested therein adversely to her.

Lizzie Green Kirkland died in 1916, leaving a last will and testament, whereby she left the residue of her estate to the Safe Deposit and Trust Company of Baltimore (now the appellee) in trust for "uses and trust purposes" as follows:

"(1) To collect all the income arising therefrom and to pay thereout all expenses chargeable thereon;

"(2) To pay unto my husband out of said income the sum of Twelve Hundred Dollars ($1,200.) per annum in monthly instalments during his life accounting from the time of my death;

"(3) To pay the balance of said income, from the time of my death, and the whole thereof after the death of my husband, *to my daughters living from time to time as said income is payable* and the children and descendants living at those times of such of my daughters as may be deceased, per stirpes.

"(4) Said trust shall continue during the lives of my husband and daughters and upon the death of the last survivor of them the corpus of my estate shall be paid over and distributed by said Trustee to such persons and for such uses and objects as shall be declared by the Wills of my daughters respectively, each of my said daughters being hereby given the right to dispose of by Will one-third of the *corpus* of said trust funds, and should any of my said daughters fail so to do, then my other daughters shall have the right to dispose of by Will one-half of the corpus of said trust funds, and should two of my daughters so fail to do, then my other daughter shall have the right to dispose of by Will the whole of said trust fund." (Italics added.)

The will further provided:

"FOURTH: All payments hereunder directed to be made to the beneficiaries shall be into their hands and not to others, whether claiming by their authority or otherwise."

Mrs. Kirkland had three daughters, Elizabeth Green, Mary Clara and Daisy S., all of whom were living at her death.

Elizabeth Green died in 1941, leaving a brief will by which she gave her entire estate and property to her sisters, Mary Clara and Daisy S., or the survivor. It is conceded that under the provisions of Article 93, sec. 359 (Code 1957) this will was an exercise of the power given to her by her mother's will.

The testatrix' husband is now deceased, and none of the three daughters has ever married, the two that now survive being elderly. In 1954, Mary Clara suffered a stroke, and was left in such a condition that she was unable to care for herself, which involved expenses in excess of the income from the trust.

Shortly after Mary Clara was taken ill, Daisy S. brought suit against the appellee, as trustee, seeking an order to make payments from the corpus of the trust to defray the extraordinary expenses. The matter was heard, and a decree was entered dismissing the bill of complaint.

In 1957, Mary Clara was adjudicated an incompetent and Daisy S. was appointed committee of her person and estate. Daisy S., as committee, then brought this suit seeking a termination of the trust. The court below dismissed her bill and she has appealed.

### I

The appellee claims that the appellant has no standing in court, as the suit brought by her in 1954, in her individual capacity, renders the controversy herein involved *res judicata*. We shall not consider this contention in detail, but shall assume, without deciding, that the doctrine has no application to the facts of this case.

### II

The appellant contends that the power of appointment, given to each life tenant to dispose of one-third of the corpus by will, was intended to be "immediately effective" upon the death of the donee; consequently upon Elizabeth Green's death, a one-sixth interest of the corpus vested immediately in Mary Clara free of the trust. Powers of appointment are to be construed in the light of the grantor's intention, and the settlor in this case has clearly expressed her intention in

the terms of her will. The will states that the "* * * trust shall continue during the lives of my husband and daughters and upon the death of the *last survivor of them* the corpus of my estate shall be paid over" to those whomever the daughters shall appoint. (Italics added.) This language clearly contemplates and directs but one distribution of the corpus, and names the time—upon the death of the last survivor of her husband and daughters. It is also clear that an earlier distribution of corpus would reduce income and render the provisions of (3) of the will, quoted above, ineffective. Dissipation of the principal was clearly not anticipated. The will not only specifically limits the powers of appointment of the daughters to the "corpus," but requires the trustee "to collect all of the income arising" from the trust, to pay her husband "out of said income" the sum of $1,200 per year and "to pay the balance of said income" to her daughters, or, if deceased, to their children and descendants. It is possible that two of the daughters might have exercised their powers of appointment in favor of strangers, and, by doing so, if the appellant's contention were correct, have reduced the income of the last surviving daughter to one-third of that derived from the trust. As indicated above, we do not think this was contemplated by the testatrix, but, on the contrary, it was her primary intention, as gathered from the provisions of the will, to provide for the care and comfort of her husband and daughters from the income from the trust.

### III

The appellant also contends that her incompetent is now the life tenant of one-half, and vested remainderman of one-sixth, of the fund; therefore, she argues that the incompetent, as a life tenant who has also acquired a vested remainder in one-sixth of the fund, has a right to compel a termination of the trust to the extent of one-sixth thereof, "unless some material purpose of the settlor would be thereby defeated." If we assume, without deciding, that this contention states the law correctly, it is clear that the appellant cannot prevail. It will be noted that the whole proposition is predicated upon

the fact that in order to compel a termination of the trust, either partially or *in toto,* no material purpose of the settlor shall be defeated. Ever since the case of *Smith v. Towers,* 69 Md. 77, 14 A. 497, 15 A. 92, the words of Item Fourth of the will have been recognized as creating a spendthrift trust. *Johnson v. Stringer,* 158 Md. 315, 322, 148 A. 447; *Hitchens v. Safe Deposit & Trust Co.,* 193 Md. 53, 58, 66 A. 2d 93.

These cases and many others in Maryland have upheld the immunity of spendthrift trusts from attempted invasion by creditors of the beneficiaries. A necessary corollary of such a policy is that spendthrift trusts must be immune from attempts by the beneficiaries themselves to reach the corpus. As Dean Griswold has pointed out, to permit premature termination by the beneficiaries, either in whole or *pro tanto,* would amount to an assignment of the corpus, the very thing that a restraint on alienation, such as we have in the case at bar, forbids. Griswold, *Spendthrift Trusts,* (2 Ed.), Secs. 517, 517.1. If a beneficiary be forbidden to assign her interest in the trust, should she be allowed to accomplish the same result by termination? We think the answer is apparent. The purpose of the restraint on alienation such as the one in this trust is not only to protect the beneficiaries from the claims of creditors, but also to assure the maximum annual income.

## IV

The final claim of the appellant is that "where all the *cestuis que trustent* in existence consent and there are no persons unborn with any prospective interest in the trust fund, the trust can be terminated, unless there is some purpose of the settlor that would be frustrated by such termination." This claim has been partially answered in III. It relies upon the premises: (1) that no material purpose of the settlor would be frustrated by termination (this, of course, was also claimed in III); and (2) there are no persons unborn with any prospective interest in the trust fund. Again, we shall assume, without deciding, a point in favor of the

appellant: we shall do so with reference to her claim that there are no persons unborn with any prospective interest in the trust fund. (We emphasize, however, that we make this assumption without so deciding. *In re Ricards' Trust Estate,* 97 Md. 608, 614-619, 55 A. 384.)

This leaves for consideration (1) above, which was considered in III, as it applies to the present contention of the plaintiff. It is true, as a general proposition, that when a trust has been created in which several beneficiaries have an interest, and there is no restraint on alienation or anticipation, if all the beneficiaries are *sui juris,* the trust may be terminated upon their joint request. *Manders v. Mercantile Trust Co.,* 147 Md. 448, 128 A. 145. However, when the interest of one or more of the beneficiaries is subject to a restraint on alienation, the situation is not the same. If the trust may be ended in such a case by the joint action of the beneficiaries, the transaction, as above indicated, is tantamount to an assignment of the interest of the beneficiary of the spendthrift trust; accordingly, the courts have held in such cases that the trust may not be terminated, even though all the beneficiaries are *sui juris* and join in seeking the termination. Griswold, *Spendthrift Trusts,* (2 Ed.), Secs. 517, 518. See also *Restatement, Trusts,* Sec. 337 (1), (2), and Comment 1; 3 Scott, *Trusts,* Sec. 337.2 .

In the *Manders* case, *supra,* this Court discussed the premature termination of a spendthrift trust. There, after a careful examination of the trust instrument, it was held that the trust therein being considered was not a spendthrift trust, all of the objects and purposes of the trust which were inconsistent with the full beneficial ownership and control of the *cestuis que trustent* had been fulfilled, all of the parties who were, or could be, beneficially interested in the trust property were in existence and *sui juris,* and they all consented and agreed to the termination of the trust; consequently, it was proper that the trust be terminated. However, the opinion makes it perfectly clear that the presence of a spendthrift trust such as that in *Smith v. Towers, supra,* or in the case at bar would have prevented the termination of the trust.

We are therefore of the opinion that the Chancellor was correct in dismissing the appellant's bill of complaint.

*Decree affirmed, costs in this court to be paid by the appellee out of the corpus of the trust estate.*